DONNA LOISEL *v.* AUDREY ROWE, COMMISSIONER OF INCOME MAINTENANCE ET AL.
(15029)

PETERS, C. J., and CALLAHAN, BORDEN, BERDON, NORCOTT, KATZ and PALMER, Js.

*(Two justices dissenting)*

Argued January 10—decision released June 6, 1995

*Jennifer C. Jaff*, assistant attorney general, with whom were *Hugh Barber*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, *Richard J. Lynch*, assistant attorney general, and *Daniel K. Lamont*, for the appellants (defendants).

*Garrett H. Tuller*, with whom were *Shirley Bergert* and, on the brief, *Thomas R. Kasper*, law student intern, for the appellee (plaintiff).

PETERS, C. J. This case raises significant questions concerning the relationship between federal welfare benefits, the composition of assistance units and the eligibility criteria for the state general assistance program. The plaintiff, Donna Loisel, appealed to the Superior Court pursuant to General Statutes (Rev. to 1993) §§ 17-2b (b) and 4-183 from the administrative denial of her applications for general assistance benefits.[1] The trial court reversed the administrative decisions, holding that social security benefits received by the plaintiff's children improperly had been included in calculating the plaintiff's income and that without the inclusion of those benefits the plaintiff was eligible for general assistance benefits under General Statutes (Rev. to 1993) § 17-273.[2] The commissioner of income

---

[1] "General assistance is a state run program designed to aid individuals and their families who have insufficient income or assets to meet their essential needs." *Barannikova* v. *Greenwich*, 229 Conn. 664, 672, 643 A.2d 251 (1994).

[2] General Statutes (Rev. to 1993) § 17-273 provides in relevant part: "LIABILITY OF TOWN FOR SUPPORT. REGULATIONS. (a) Each person who has not estate sufficient for his support, and has no relatives of sufficient ability who are obliged by law to support him, shall be provided for and supported to the extent required under the provisions of this chapter and section 17-3a at the expense of the town in which he resides, except as otherwise provided in this section, or, if he has no residence, of the town in which he

maintenance (commissioner) appealed from that judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). Since the rendering of the trial court's judgment, however, intervening events have rendered the case moot. We therefore dismiss this appeal for lack of subject matter jurisdiction.

The facts are not in dispute. The plaintiff, a resident of the town of Mansfield, is the custodial parent of two minor children. The children receive federal social security survivors' benefits totaling $1116 per month because of the death of their father.[3] The plaintiff, who was not married to her children's father, receives no survivor's benefits of her own. She does, however, serve as the representative payee for her children's benefits.

becomes in need of aid, subject to the provisions of section 17-273b, subsection (a) of section 17-281a, and in accordance with section 17-292g except that in making a determination of liability for support under this section the income of a stepparent living in the same home as a dependent child or dependent children shall be considered in the same manner and to the same extent as under the aid to families with dependent children program pursuant to section 17-85. . . . A person who is a recipient of financial aid under chapter 302 or of social security disability or supplemental security income shall be considered to be provided for by the state or federal government. On and after September 4, 1991, no such person shall be eligible to receive general assistance financial or medical aid. No town shall be liable to supplement a recipient of financial aid under chapter 302 whose award has been reduced or suspended or who has been penalized with a period of ineligibility, during such period of ineligibility. A person who is a recipient of medical aid under chapter 302 shall be considered to have his medical needs provided for by the state and no such person shall be eligible to receive general assistance medical aid. . . . .

"(c) Except as provided in sections 17-280 and 17-281, a person whose assets exceed two hundred fifty dollars shall not be eligible for assistance pursuant to this section or section 17-274. The commissioner of income maintenance may adopt regulations, in accordance with chapter 54, to implement the provisions of this subsection. . . ."

This section has been recodified at General Statutes (Rev. to 1995) § 17b-116.

[3] See 42 U.S.C. § 401 et seq., Old-Age, Survivors, and Disability Insurance.

On November 19, 1992, the plaintiff filed an application for general assistance medical assistance with the town of Mansfield. The plaintiff recited in her application that, except for her children's benefits, she had no income and that her assets were limited to a bank account containing $6. While acknowledging that her children live in her assistance unit and that they receive total monthly benefits of $1116, she repeatedly stated that she was applying for support only for herself. At the end of the application, she wrote that "My self, I'm not able to work due to panic disorders, I have no medical [coverage] and [I] need to see a doctor for my illness. I don't feel it's right to use my children's benefits for my personal or medical needs." Her application was denied the following day. In the explanation section of the denial form, the local welfare official wrote: "Your children receive Social Security in their own name but under General Assistance policy, since the three of you are a family, the income of all members is counted in determining family income. Thus the total income exceeds the medical assistance standards."

The plaintiff subsequently filed an application for general assistance financial assistance with the town on November 30, 1992, which was identical in all material respects to her previous application. On December 1, 1992, this application too was denied.

Thereafter, at the plaintiff's request, she was afforded a local level fair hearing pursuant to General Statutes (Rev. to 1993) § 17-292d (now § 17b-63), which resulted in an affirmance of the denials. The hearing officer rejected the plaintiff's argument that, because the survivors' benefits were for her children's support only, the town ought to have treated her as an assistance unit of one in determining her need. The officer declined to rule on the plaintiff's argument that state regulations, by requiring her to be grouped with her children for the eligibility determination, violated fed-

eral and state law. The plaintiff appealed from that decision to the commissioner pursuant to General Statutes (Rev. to 1993) § 17-292e (now § 17b-64). Following a state level hearing on January 28, 1993, the decisions denying the plaintiff's applications once again were affirmed.[4]

The trial court reversed the denial of the plaintiff's general assistance applications after determining that federal law precludes the use of the children's benefits for the plaintiff's support. According to the court, because federal rules expressly permit survivors' benefits to be expended to support a beneficiary's entire Aid to Families with Dependent Children (AFDC) assistance unit, the rules necessarily imply that the benefits may not be used to support a family unit such as the plaintiff's that is not receiving AFDC benefits. Moreover, although federal rules allow social security benefits to be expended for the support of a beneficiary's legal dependents, the court determined that the benefits here could not be used for the plaintiff's support because under state law a child is not legally responsible for the support of his or her parents. The court then held that the state regulations violated the plaintiff's statutory right to support under § 17-273 because they

---

[4] The written opinion issued following the state level hearing contains a section entitled "rationale for decision," which states: "After reviewing the evidence and testimony presented at this hearing, I can find no error with the Town's actions. The [plaintiff's] representative has presented an interesting argument. However, I do not find that there is any ambiguity in policy in the determination of the composition of this assistance unit. This is a household consisting of a single adult living with her two dependent children. The fact that her children are receiving [social security survivors'] benefits does not change the household composition. These children are still the [plaintiff's] dependents, and are a part of the assistance unit. The assistance unit's income has to be counted in determining eligibility. Social Security benefits are not identified as excluded income in the General Assistance Policy Manual. Therefore, the benefits have to be counted in determining eligibility for General Assistance and are found to be sufficient to meet the needs of the assistance unit."

rendered the plaintiff ineligible for general assistance benefits on the basis of income attributed to the plaintiff that was not legally available to her. As a result, the court concluded, the plaintiff was entitled to a redetermination of her eligibility for general assistance benefits.[5]

The plaintiff has not claimed any constitutional right to receive general assistance benefits from the state.[6] The plaintiff also does not contend that, if the social security benefits properly may be treated as income available to her as a member of an assistance unit with her children, she otherwise has a statutory entitlement to receive general assistance benefits.[7] Finally, the plaintiff has not pressed her claim, argued in the trial court, that she should have been treated as an assistance unit of one for purposes of determining general assistance eligibility. See footnote 5. The plaintiff's

[5] The trial court, however, rejected the plaintiff's argument that the town was required to treat her as an assistance unit of one in making its support evaluation. The court reasoned that the defect in the general assistance regulations resided in the attribution to the plaintiff of funds the court believed not to be available to her, which it held to be a violation of federal and state law. The court therefore ruled that the town could continue to treat the plaintiff and her children as a single assistance unit, provided that in making its eligibility redetermination the town did not credit the plaintiff with resources not actually available to her.

[6] The question whether the state constitution obligates the state to provide a minimum level of assistance to the needy is currently before the court in separate proceedings. See *Moore* v. *Ganim*, Supreme Court Docket No. 14923, and *Hilton* v. *New Haven*, Supreme Court Docket No. 14925.

[7] The plaintiff and her children have an income, including the social security benefits, of at least $1116 per month. State regulations establish a ceiling for medical assistance eligibility for an assistance unit of three living in Region B, which includes Mansfield, of $772.73 per month. Regs., Conn. State Agencies § 17-3a-28 (H) (2) (General Assistance Policy Manual, c. II, § XVIII [H] [2], p. 319 [Medical Aid]). The regulations also cap eligibility for financial assistance for an assistance unit of three living in Region B at $581 per month. Regs., Conn. State Agencies § 17-3a-20 (D) (a) (General Assistance Policy Manual, c. I, § X [D] [1] [a], p. 153 [Standards of Assistance]). The plaintiff does not argue that these eligibility requirements on their face violate § 17-273.

claims on appeal essentially mirror, and are limited to, the arguments contained in the trial court's memorandum of decision.

The commissioner's response to the plaintiff's contentions is not rooted in federal social security law or in state law pertaining to a child's duty to support a parent. The commissioner's basic argument is that, because of the statute's explicit reference to the commissioner's rule-making authority under General Statutes (Rev. to 1993) § 17-3a,[8] § 17-273 creates only a qualified right to support, and thus permits the commissioner to determine who is in need of general assist-

---

[8] General Statutes (Rev. to 1993) § 17-3a provides in relevant part: "STANDARDS FOR GRANTING OF GENERAL ASSISTANCE AND MEDICAL ASSISTANCE. AUDITS. RECOVERY OF REIMBURSEMENTS. SANCTIONS. (a) The commissioner of income maintenance shall adopt regulations in accordance with the provisions of chapter 54 establishing mandatory standards for the granting of general assistance financial and medical assistance, including the level of financial assistance to be provided at the expense of the town in such cases, which shall be three hundred fourteen dollars per month for a single employable person and three hundred fifty-six dollars per month for a single unemployable person upon determination of his unemployability, subject to the provisions of subsection (b) of section 17-2 and section 17-82n, including the payment of medical bills for persons not receiving general assistance financial aid who are unable to pay such bills over a two-year period, by towns, including standards for investigation and eligibility and extent of need and procedures for record-keeping, including uniform application and billing forms to be used by medical providers as well as towns, and other office practices, and establishing time limits for the determination of eligibility for financial assistance and for the payment of medical bills for persons not receiving general assistance financial aid and for the payment of all medical assistance bills, all with the intent of aiding the towns and any districts established under section 17-273a in the efficient administration of the laws relating to granting of general assistance financial and medical assistance. The commissioner shall inform the towns and such districts of the standards so established and shall advise and assist them in their application thereof. The commissioner may recommend regional areas within which he considers it reasonable for towns to join in the establishment of such districts, and may advise the towns therein of such recommendations and his reasons therefor."

This section has been recodified at General Statutes (Rev. to 1995) § 17b-78.

ance. According to the commissioner, the general assistance eligibility regulations rationally differentiate assistance units that contain individuals who receive social security benefits from assistance units that do not receive those benefits. The distinction is rational, the commissioner insists, because the former have less need of state aid than the latter, whether or not the federal benefits may be used for the support of nonbeneficiary members of an assistance unit, even when the unit has no other income. The commissioner therefore maintains that the trial court's decision must be reversed.

We do not reach the merits of these arguments because we determine that this court lacks subject matter jurisdiction to entertain this appeal. The commissioner asserted in oral argument before this court, and the plaintiff does not deny, that the plaintiff now receives federal supplemental security income (SSI). See 42 U.S.C. § 1381 et seq. The express terms of § 17-273 (a) render a recipient of SSI benefits ineligible for general assistance. The statute provides that "[a] person who is a recipient of . . . supplemental security income shall be considered to be provided for by the . . . federal government. On and after September 4, 1991, no such person shall be eligible to receive general assistance financial or medical aid." The record also reflects that the plaintiff's SSI application was pending in November, 1992, when she filed her general assistance applications. Under the relevant federal laws, the plaintiff's SSI benefits would have been granted retroactive to the date her SSI application was filed, which predates her general assistance applications. See 42 U.S.C. § 1382 (c) (6) (1992); 20 C.F.R. §§ 416.335 and 416.501 (1994).[9] Thus, she also would

---

[9] Federal regulations also permit, prior to a full determination of eligibility for federal benefits, "a one-time emergency advance payment to an individual who is presumptively eligible for SSI benefits and who has a financial emergency." See 20 C.F.R. § 416.520 (a) (1994).

not be entitled to any unpaid "back benefits" from the general assistance program.

"When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." *In re Romance M.*, 229 Conn. 345, 357, 641 A.2d 378 (1994). Both parties nonetheless urge us to reach the merits of this case, relying on the exception to the mootness doctrine for issues that are "capable of repetition, yet evading review." Having thoroughly reviewed this court's cases applying that exception, we are persuaded that the present question does not satisfy the requirements of the exception.

The "capable of repetition, yet evading review" exception to the mootness doctrine operates within the general jurisdictional framework of the court. "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *Perry* v. *Perry*, 222 Conn. 799, 803, 611 A.2d 400 (1992); *Moshier* v. *Goodnow*, 217 Conn. 303, 307, 586 A.2d 557 (1991); *Shays* v. *Local Grievance Committee*, 197 Conn. 566, 571, 499 A.2d 1158 (1985).

The doctrine of mootness is rooted in the same policy interests as the doctrine of standing, namely, to assure the vigorous presentation of arguments concerning the matter at issue. See H. Monaghan, "Constitutional Adjudication: The Who and When," 82 Yale L.J. 1363, 1384 (1973) (describing mootness as the "doctrine of standing in a time frame: The requisite personal interest that must exist at the commencement of the litiga-

tion [standing] must continue through its existence [mootness]"). This court recently reiterated that the standing doctrine is "designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . *Rose* v. *Freedom of Information Commission*, 221 Conn. 217, 223, 602 A.2d 1019 (1992); *Board of Pardons* v. *Freedom of Information Commission*, 210 Conn. 646, 649, 556 A.2d 1020 (1989); *Maloney* v. *Pac*, 183 Conn. 313, 320, 439 A.2d 349 (1981)." (Internal quotation marks omitted.) *Golden Hill Paugussett Tribe of Indians* v. *Southbury*, 231 Conn. 563, 571, 651 A.2d 1246 (1995).

Although the phrase "capable of repetition, yet evading review" comes from the United States Supreme Court case of *Southern Pacific Terminal Co.* v. *Interstate Commerce Commission*, 219 U.S. 498, 515, 31 S. Ct. 279, 55 L. Ed. 310 (1911), and was further developed by that court in *Weinstein* v. *Bradford*, 423 U.S. 147, 149, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975), we have historically exercised our authority to develop our own criteria for the application of this exception to mootness. Under federal law, the exception applies only where two elements combine: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) in the absence of a class action, there was a reasonable expectation that the complaining party would be subjected to the same action again. See id. Under *Delevieleuse* v. *Manson*, 184 Conn. 434, 437 n.2, 439 A.2d 1055 (1981), however, this court held that a moot case that satisfied the first element could be reviewed, even in the absence of a "reasonable expectation" that the same complaining party again would be subject to the same action, if the issues arose under an ongoing governmental program that

might affect the complaining party in the future. This court also noted that an important factor in mootness was whether the public importance of the issues made it desirable to decide them. Id., 437.

Other than by identifying the factors to be taken into account, we have never defined clearly what is meant by "capable of repetition, yet evading review." Specifically, the cases are unclear with respect to whether a case will be moot unless the litigants satisfy *all* the factors or whether some factors are more significant than others in the determination of mootness.

In *Waterbury Hospital* v. *Connecticut Health Care Associates*, 186 Conn. 247, 253 n.5, 440 A.2d 310 (1982), for example, we explained that satisfaction of the first prong of *Delevieleuse*—that the case was "capable of repetition, yet evading review"—"was not, in and of itself, a justification for reviewing an admittedly moot case but was merely one factor to be considered when faced with a potentially moot matter." We then listed other factors to be considered, including: "(1) the public importance of the question presented; (2) whether an ongoing program of the state's penal or civil system is affected; and (3) whether the appellant himself could be similarly affected in the future." Id.; see also *Shays* v. *Local Grievance Committee*, supra, 197 Conn. 572–73 (relying on *Waterbury Hospital* and *Delevieleuse*). Because we determined in *Waterbury Hospital* that all four factors had been satisfied, we did not indicate whether a failure to meet any of them individually would have precluded review.

A series of cases after *Waterbury Hospital* similarly described the various factors first identified in *Delevieleuse* without indicating whether the court was engaged in a balancing process. In *Shays* v. *Local Grievance Committee*, supra, 197 Conn. 574, we declined to review a moot question that was "capable of repetition, yet

evading review" because the case failed to satisfy two of the *Delevieleuse* factors, specifically that "contempt proceedings against legislators are part of an ongoing penal or civil program" or that "this plaintiff will again be subject to the sanction of imprisonment for contempt of court during a legislative session."[10] In *Sobocinski* v. *Freedom of Information Commission*, 213 Conn. 126, 135–36, 566 A.2d 703 (1989), we cited the same multiple factors in declining to review a case that involved a single discrete automobile accident, rather than an ongoing penal or civil program, and a plaintiff who was not likely to encounter similar problems in the future.

In *Goodson* v. *State*, 228 Conn. 106, 115, 635 A.2d 285 (1993), we stated, for the first time, that the *Delevieleuse* factors were illustrative rather than dispositive. "No one factor is controlling, nor must all of the . . . factors be present. To decide the applicability of the exception, we must instead review the circumstances of each case." Id. The court found the exception applicable because the case involved an ongoing civil program in the form of a state employee bargaining agreement grievance procedure, an issue that

---

[10] In an apparent departure from *Delevieleuse*, the court announced in *Hartford Principals' & Supervisors' Assn.* v. *Shedd*, 202 Conn. 492, 498–99, 522 A.2d 264 (1987), that a moot case would not be reviewed unless there was a reasonable expectation that the same complaining party again would be subject to the same action. For this proposition, it relied on the very language in *Weinstein* that had been quoted in *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union*, 177 Conn. 17, 21, 411 A.2d 1 (1979), but disapproved in *Delevieleuse. Hartford Principals' & Supervisors' Assn.* v. *Shedd,* supra, 498–99; see also *Delevieleuse* v. *Manson,* supra, 184 Conn. 437 n.2. In practice, however, the court did not apply a test any more stringent than the one discussed in *Delevieleuse,* noting that the possibility that similar disputes between the parties "are likely to arise again is not an unreasonable assumption." *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* supra, 499. Thus, it does not appear that the dictum in *Shedd* was meant to overrule *Delevieleuse* or to resurrect *Connecticut Foundry Co.* and the *Weinstein* language. After *Shedd,* moreover, the court returned to the *Delevieleuse* formulation.

might affect the plaintiff's union in the future, and a matter of public importance.[11] In effect, the court found all of the *Delevieleuse* factors to have been satisfied.

In our decisions concerning whether we can afford practical relief to the litigants in a particular controversy, this court continues to rely on the factors identified in *Delevieleuse*: (1) Are the issues of such short duration that they will evade review? (2) Do the issues relate to an ongoing civil or penal program of the state? (3) Is the plaintiff, as part of a class or as an individual, likely to be affected in the same manner again? and (4) Do the issues raise matters of public importance? Our application of these various factors, however, has not always been consistent.

We take this opportunity to synthesize our prior case law in order to clarify the contours of the doctrine. This court's application of the doctrine consistently has adhered to certain basic principles. Our cases reveal that for an otherwise moot question to qualify for review under the "capable of repetition, yet evading review" exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the

---

[11] This court subsequently dismissed the plaintiff's claim for relief on the ground that the trial court lacked jurisdiction to entertain it. *Goodson* v. *State*, supra, 228 Conn. 115.

appeal must be dismissed as moot.[12] We discuss these three requirements in turn.

## EVADING REVIEW:
## THE INHERENTLY LIMITED DURATION REQUIREMENT

The first element in the analysis pertains to the length of the challenged action. Although this court has not expressly addressed a time requirement in its previous cases, such a requirement is inherent in the overall statement of the doctrine itself. Most cases in which review has been undertaken despite a claim of mootness implicitly recognize the existence of functionally insurmountable time constraints. See, e.g., *Goodson* v. *State*, supra, 228 Conn. 106 (limited duration of orders pursuant to General Statutes § 52-422); *Hartford Principals' & Supervisors' Assn.* v. *Shedd*, 202 Conn. 492, 522 A.2d 264 (1987) (collective bargaining agreements likely to expire before dispute can be fully litigated); *Board of Education* v. *Board of Labor Relations*, 201 Conn. 685, 519 A.2d 41 (1986) (same). Even in instances in which the exception did not apply for some other reason, there was no doubt that the challenged action had an intrinsically limited lifespan. See *Shays* v. *Local Grievance Committee*, supra, 197 Conn. 566 (ten day contempt order); *Waterbury Hospital* v. *Connecticut Health Care Associates*, supra, 186 Conn. 251 (injunction against picketing during strike that subsequently ended; court notes that strike is " 'not of such a permanent character as to be substantially impervious to change' ").[13] The basis for this element derives from the nature of the exception. If an action or its effects

---

[12] Our analysis is intended to provide guidance for a complex jurisdictional matter by establishing specific guidelines just as in *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983), we established guidelines for the perplexing question of what constitutes a final judgment for purposes of appellate review.

[13] We note that the federal courts follow this rule. See, e.g., E. Chemerinsky, Federal Jurisdiction (1989) § 2.5.3, pp. 115–16.

is not of inherently limited duration, the action can be reviewed the next time it arises, when it will present an ongoing live controversy. Moreover, if the question presented is not strongly likely to become moot in the substantial majority of cases in which it arises, the urgency of deciding the pending case is significantly reduced. Thus, there is no reason to reach out to decide the issue as between parties who, by hypothesis, no longer have any present interest in the outcome.

### CAPABLE OF REPETITION: THE RECURRENCE REQUIREMENT AND THE SURROGACY CONCEPT

The second and third factors from *Delevieleuse* (ongoing program and continuing involvement of the plaintiff) were designed to enable the court to determine whether the controversy is "capable of repetition" in a manner sufficiently related to the interests of the present litigants so that they have continued standing to contest the issues. This analysis entails two separate inquiries: (1) whether the question presented will recur at all; and (2) whether the interests of the people likely to be affected by the question presented are adequately represented in the current litigation.

A requirement of the likelihood that a question will recur is an integral component of the "capable of repetition, yet evading review" doctrine. In the absence of the possibility of such repetition, there would be no justification for reaching the issue, as a decision would neither provide relief in the present case nor prospectively resolve cases anticipated in the future. This concern properly may be understood as the gravamen of the "ongoing program" factor enunciated in *Delevieleuse*. The *Shays* case demonstrates this same point in reverse, because, as the court observed, it was "highly improbable that this plaintiff will again be subject to the sanction of imprisonment for contempt of court." *Shays* v. *Local Grievance Committee*, supra, 197 Conn. 574.

If the "ongoing program" factor were viewed as mandatory by itself, however, rather than as a proxy for the recurrence requirement, the doctrine would be underinclusive. To begin with, it would mean that a case equivalent to *Roe* v. *Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973), the paradigm of an issue capable of repetition, yet evading review, could never be heard in the absence of a class action. The mere fact of a single prosecution for abortion would not demonstrate an "ongoing penal or civil *program*," any more than a single contempt citation demonstrates one. (Emphasis added.) *Shays* v. *Local Grievance Committee*, supra, 197 Conn. 574. Yet cases arising in this context certainly merit judicial review.

The policy concerns that animate this court's jurisdictional rules also suggest that the doctrine must address not only the question of *whether* the mooted claim is likely to arise again, but also the question of *to whom* that claim is likely to apply. This supplemental requirement is necessary to ensure that "judicial decisions which may affect the rights of others are forged in hot controversy, with each side fairly and vigorously represented." *Golden Hill Paugusset Tribe of Indians* v. *Southbury*, supra, 231 Conn. 571.

The "same party" factor was intended in part to address this concern. If the situation is one in which the litigating party actually may be affected by the court's decision in the future, then obviously the required nexus is present. See, e.g., *Taylor* v. *Robinson*, supra, 171 Conn. 695 (issue presented "might well affect the [petitioners]" in the future).

This premise, however, does not mandate a strict rule that the *identical* party must be likely to be affected in the future. See, e.g., *Goodson* v. *State*, supra, 228 Conn. 115 (noting that "[n]o one factor [including the 'same person' factor] is controlling"). As Professor

Tribe observes, "[t]he issue may repeat either in the sense that one individual will confront it more than once or in the sense that all the members of a group may each confront it." L. Tribe, American Constitutional Law (2d Ed. 1988) § 3-11, p. 84 n.16.

There is, nonetheless, a need for some nexus between the litigating party and those people who may be affected by the court's ruling in the future. It is this nexus that the "surrogacy" concept addresses. Class action lawsuits represent one manifestation of this broader view of the nexus requirement. By definition, the representative party has been determined by the court to be capable of litigating the interests of all the members of the certified class.[14] See Practice Book § 87 (requiring as prerequisite a finding that "the representative parties will fairly and adequately protect the interests of the class").

Formal class certification, however, has not been required historically. This court frequently has presumed that a party's nexus to the group of potentially affected people was adequate, despite the lack of either formal class certification or any reasonable basis from which to assume that the same party would face the same situation in the future. The two most prominent lines of cases proceeding along this line involve prisoners; see, e.g., *Delevieleuse* v. *Manson,* supra, 184 Conn. 434; *Taylor* v. *Robinson,* supra, 171 Conn. 691; and union members. See, e.g., *Goodson* v. *State,* supra, 228 Conn. 106, and cases cited therein.

The precise contours of "surrogacy" in this context need not be defined here. Certainly they would exclude

---

[14] The discussion of class action lawsuits in this context is purely illustrative. Class action lawsuits themselves involve a separate exception to the mootness doctrine. See, e.g., *Dukes* v. *Durante,* 192 Conn. 207, 227–28, 471 A.2d 1368 (1984) (suggesting that in proper circumstances class action suit would not be subject to mootness rule); see generally E. Chemerinsky, Federal Jurisdiction (1989) § 2.5.5, pp. 121–24 (discussing federal rule).

a public interest advocacy group purporting to litigate on behalf of, without actually representing, any of the affected parties. Further articulation of the appropriate middle ground between public interest advocacy completely divorced from the relevant parties, which presents too minimal a nexus, and class action litigation, which imposes an overly formal nexus requirement, must proceed on a case-by-case basis.

## PUBLIC IMPORTANCE

The requirement of public importance is largely self-explanatory. Since judicial resources are scarce, and typically reserved for cases that continue to be contested between the litigants, this court does not review every issue that satisfies the criteria of limited duration and likelihood of recurrence. Consideration of the importance of the issue represents a sound means for distinguishing those cases that should be reviewed and those that should not. Sheer public importance, however, cannot remedy a failure to satisfy the other components of the doctrine. Whether the court can review an otherwise moot claim "turns not only on the importance of the . . . issue that the plaintiff has raised but also on a determination that his [or her] case satisfies the overall test of 'capable of repetition, yet evading review.' " *Shays* v. *Local Grievance Committee*, supra, 197 Conn. 573.

Applying these principles to the present case, we are persuaded that the question presented does not satisfy the criteria for application of the "capable of repetition, yet evading review" exception. The issue presented in this case is of public importance. Moreover, it is likely to recur, and the plaintiff certainly would qualify as a surrogate for other general assistance recipients. The parties have failed to establish, however, a strong likelihood that the substantial majority of cases challenging the action in question will become moot

before they can be reviewed. It is likely that some plaintiffs who are denied general assistance benefits will not receive SSI; see, e.g., 20 C.F.R. § 416.202 (1994) (eligibility standards for SSI require disability, not simply lack of resources); and, even if other plaintiffs do receive SSI, many may not receive such benefits retroactive to a date preceding their general assistance applications. In this case it is not the plaintiff's receipt of SSI per se, but the fact that those benefits were retroactive to a point in time that predates her general assistance applications, that renders this case moot. Had her SSI application been filed subsequent to her general assistance applications, there would remain an ongoing controversy relating to eligibility for back benefits during the interim between the denial of her general assistance benefits and the commencement of SSI that would shield the case from dismissal. Similarly, if a plaintiff were to lose eligibility for any other reason, such as securing gainful employment, the claim for back benefits would still be justiciable. Here, however, because the parties have neither demonstrated the existence of such a live controversy nor satisfied the requirements of the "capable of repetition, yet evading review" exception, we must dismiss the case as moot.

The appeal is dismissed.

In this opinion CALLAHAN, BORDEN, NORCOTT and PALMER, Js., concurred.

KATZ, J., with whom BERDON, J., joins, dissenting. The majority decides that the plaintiff's claim is moot and, therefore, dismisses the case without determining whether social security benefits payable to a claimant's children may properly be included in calculating that claimant's income eligibility for general assistance benefits under General Statutes (Rev. to 1993) § 17-273. Because I believe that the case qualifies under this

state's version of the "capable of repetition, yet evad-ing review" exception to the mootness doctrine, I con-clude that the plaintiff's case should not be dismissed on the basis of mootness. Accordingly, I respectfully dissent.

I must first emphasize that I concur with most of the majority's reasoning and analysis. I agree that the plaintiff's case is moot due to her receipt of supplemen-tal security income (SSI) benefits that were retroac-tive to a point in time that predated her general assistance applications. I also agree that the applica-tion of the "capable of repetition, yet evading review" exception to the mootness doctrine in our prior case law has not always been particularly clear and that this case presents a good opportunity for clarification. I also concur that the court should take into account three factors in determining whether a moot case qualifies for review under the "capable of repetition, yet evad-ing review" exception. I disagree with the majority, however, that our "capable of repetition, yet evading review" jurisprudence *requires* a case to satisfy *all* three factors. Instead, I believe that a moot case quali-fies for this exception if consideration of the three fac-tors strongly balances in favor of review. Moreover, I believe that the majority's statement of the first ele-ment is overly restrictive. Because I believe that the plaintiff's case satisfies this exception, I would reach the merits of the case.

I

In cases involving the "capable of repetition, yet evading review" exception to the mootness doctrine we consistently have avoided the use of a rigid test such as that now employed by the majority. Instead, we have utilized a more flexible approach that balances the three factors. In *Goodson* v. *State*, 228 Conn. 106, 115, 635 A.2d 285 (1993), we stated that "[n]o one factor is con-

trolling, nor must all of the above factors be present. To decide the applicability of the exception, we must instead review the circumstances of each case."[1] Similarly, we recognized in *In re Romance M.*, 229 Conn. 345, 358, 641 A.2d 123 (1994), that "[t]he availability of the ['capable of repetition, yet evading review'] exception depends upon all the relevant circumstances of each case." In fact, in *Delevieleuse* v. *Manson*, 184 Conn. 434, 437 n.2, 439 A.2d 1055 (1981), we expressly noted our disapproval of an earlier case[2] that had failed to "discuss the extent to which the public importance of a question compensates for the reduced weight of other factors that militate against the mootness of the question."

Furthermore, although the majority cites to some cases to state that "[m]ost cases in which review has been undertaken despite a claim of mootness implicitly recognize the existence of functionally insurmountable time constraints," this citation of cases ignores other instances in which this court has undertaken review based on a balancing of all the relevant factors. In *Delevieleuse* v. *Manson*, supra, 184 Conn. 437 and n.2, this court determined that it could review the moot claim because the case satisfied the "capable of repetition, yet evading review" exception to mootness. It is significant that the *Delevieleuse* court reached this conclusion despite the fact that the nature of the plaintiff's claim involved no "functionally insurmountable time constraints." Indeed, *Delevieleuse* illustrates that

---

[1] Although we also stated that "[t]he time dimension that the name of the exception implies is necessary but not itself sufficient to invoke our appellate jurisdiction"; *Goodson* v. *State*, supra, 228 Conn. 115; this was merely dictum because we found that the issue involved, whether a trial court may reinstate a discharged state employee pending the operation of a contractual grievance procedure, would evade review in the future due to the limited duration of such reinstatements.

[2] *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union*, 177 Conn. 17, 411 A.2d 1 (1979).

a moot claim is reviewable under this exception if the public importance of its issues and other factors in favor of its review outweigh the fact that there technically is not, as stated by the majority, "a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded."

The petitioner in *Delevieleuse* was an inmate who was serving a thirty month sentence in a state correctional facility for his conviction of seven larceny counts. The petitioner had pleaded guilty to all seven counts and had received a six month sentence on each count. The court had ordered that the first five sentences run consecutively to one another and that the other two sentences run concurrently with the first five. Thus, the total effective sentence was thirty months. Id., 435.

The petitioner had spent fifty-six days in presentence custody under a mittimus containing one docket number, and the respondent, the commissioner of correction, had credited him with fifty-six days of credit pursuant to General Statutes § 18-97.[3] Believing that he was entitled to fifty-six days of credit for each of his five consecutive sentences, he applied for a writ of habeas corpus. The habeas court interpreted the statute as forbidding any multiple credit and rendered judgment for the respondent. Thereafter, the petitioner appealed to this court. Before this court issued its decision in the case, however, the petitioner had already finished serving his sentence. Consequently, the petitioner's case was moot and we had to determine whether it satisfied the "capable of repetition, yet evading review" exception to the mootness doctrine.

---

[3] General Statutes § 18-97 provides in relevant part: "Any person receiving . . . a sentence to a correctional institution or a community correctional center . . . shall receive credit towards . . . any portion of such sentence as to which execution is not suspended for any days spent in custody under a mittimus as a result of any court proceeding for the offense or acts for which such . . . sentence is imposed . . . ."

In concluding that the case satisfied the exception, we stated: "In *Liistro* v. *Robinson,* 170 Conn. 116, 365 A.2d 109 (1976), and *Taylor* v. *Robinson,* 171 Conn. 691, 372 A.2d 102 (1976), we reached the merits of claims that inmates were entitled to bail pending the outcome of parole proceedings and that the Uniform Administrative Procedure Act (UAPA); General Statutes §§ 4-166 through 4-189; applied to parole release hearings, even though the plaintiffs had been granted parole before we considered the appeals. Those cases could afford practical relief because the issues involved (1) were capable of repetition, yet evading review; (2) affected an ongoing program of the state's penal system; and (3) could very well affect the plaintiffs should they be convicted in the future. *Taylor* v. *Robinson,* supra, 694–95. We also noted that (4) the public importance of the questions made it desirable to decide the points. Id., 694, citing *Winnick* v. *Reilly,* 100 Conn. 291, 296, 123 A. 440 (1924). Those four considerations control the present appeal." *Delevieleuse* v. *Manson,* supra, 184 Conn. 437.

It is clear that the petitioner's claim in *Delevieleuse* was not "of inherently limited duration" as formulated by the majority in this case. Although we recognized that "the issue . . . affects approximately 200 inmates"; id., 436; and thus was capable of repetition, there was nothing to indicate that such a claim would "evade review" in future cases. Nothing in that opinion indicates that all of the other "approximately 200 inmates" affected by the decision, had they filed similar applications for writs of habeas corpus, also would have finished serving their sentences before completing the appellate process. Rather, because there likely were, at the time of our decision in *Delevieleuse,* other prison inmates who had spent a number of days in presentence custody and were serving, on the basis of a number of smaller consecutive sentences, total effec-

tive sentences in excess of the few years ordinarily necessary to litigate an appeal fully, there was not a "strong likelihood that the substantial majority" of other such claims would evade review in the future.

Furthermore, our reliance in *Delevieleuse* on *Taylor* v. *Robinson,* supra, 171 Conn. 691, is instructive because that case also involved a claim that was not likely to evade review in future cases. In that case, a prison inmate who had been denied parole at least four times challenged the legality of the prison's parole proceedings under the UAPA. Id., 692. The inmate finally had been paroled by the time we heard his appeal, and we recognized that his case was therefore moot. Id., 694. Nevertheless, we decided to consider the merits of his claim. Id., 695. In doing so, we expressly noted the "considerable public interest" involved, including the fact that the parole board at that time conducted 1700 parole hearings each year. Id. Again, however, there is no indication in that decision that we ever considered whether it is more likely than not that, whenever a prison inmate challenges parole proceedings, he invariably will have been paroled by the time his appeal is heard by this court. Indeed, it seems likely that this claim was capable of being brought by other aggrieved inmates who were serving lengthy sentences and who, therefore, could have litigated the issue fully without it becoming moot.

These cases demonstrate that the majority misinterprets the "capable of repetition, yet evading review" exception to the mootness doctrine. This court decided *Delevieleuse* and *Taylor* on their merits, even though it must have been clear that such claims undoubtedly would not evade review in the future. Thus, *Delevieleuse* and *Taylor* unquestionably demonstrate that certain moot claims involve issues of such importance that they deserve immediate review. In other words, these cases reflect that certain moot claims involve issues,

like criminal sentencing and parole procedures, that are of such widespread application and profound importance that they are reviewable on the basis of this exception, even though future litigants eventually may be able to bring similar claims.

The majority's decision to disregard our prior balancing test is troubling, especially when one considers the practical implications of that decision. It is clear that, under the new approach, the court would not be able to decide a claim like that at issue in *Delevieleuse* or *Taylor*. Indeed, we would have no choice but to ignore a claim, as in *Delevieleuse*, the outcome of which would immediately affect 200 other similarly situated inmates. Similarly, we would have no choice but to ignore a claim, as in *Taylor*, that the parole board, which conducted some 1700 parole release hearings each year, was operating illegally. This would be the result no matter how great the public importance of the case, no matter how fervent the advocacy and no matter how late in the appellate process the case became moot. As was the case for the hundreds of inmates who were immediately affected by our decisions in these cases, the prospect that some future litigant may complete the appeal does not "significantly reduce" the urgency of deciding the pending case for the others who will be immediately impacted by the ruling.

## II

This court's approach in *Delevieleuse* also indicates that the first element of the majority's test, that the claim *must* be subject to inherently limited time constraints such that "there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded," is much more narrow than previously utilized by this court. Indeed, this court's approach in *Delevieleuse* demonstrates that the oft-

quoted "capable of repetition, yet evading review" element requires only that the claim be capable of repetition, yet evading *meaningful* review.

In *Delevieleuse*, the decision's focus on the approximately 200 inmates who were affected by the claim shows that this court did not require the claim to have avoided review in the substantial majority of future cases. Instead, we implicitly recognized that, although some future petitioners would likely be able to bring similar claims that would not become moot, certainly a significant number of such inmates would unnecessarily be subjected to prison were we to postpone our decision. Consequently, our decision in *Delevieleuse* recognized that, although these inmates would complete appellate litigation, the outcome of the litigation would be ineffective if they were to be released from prison only after serving an excessive number of days.

Additionally, this court's formulation of the first element in *Delevieleuse* also factored in a concern for other inmates whose claims would become moot, but only after such inmates had first served illegally lengthy prison sentences. Because these inmates could be eligible for release immediately upon or soon after the issuance of the decision, we reviewed the claim even though some other inmates could have completed the appellate process at a later date. Put differently, because there were individuals who could benefit from the decision and receive immediate release from incarceration, we did not blindly ignore their predicament merely because other inmates would eventually be able to complete the appellate process.

This concept of meaningful review informs the present case. The plaintiff's claim satisfies the first element not because a substantial majority of similar such claims will become moot before the completion of appellate litigation, but because future such litigants will be

denied an effective outcome. There surely are many potential litigants who currently could bring a claim similar to that of the plaintiff and complete the appellate process prior to the claim becoming moot. The reality of appellate litigation, however, is that it takes several months from the time an appeal is filed for it to be decided. For the indigent person who has been denied general assistance benefits, that period could represent a lifetime. The term "indigent person" itself makes clear that these persons have no alternative sources of income to which to turn to preserve themselves during the course of appellate litigation. Consequently, even if we assume that such litigants will be entitled to general assistance benefits retroactive to the filing of their original applications, these individuals will have been denied the assistance during the period of time in which they needed it the most. These ultimately successful litigants will first have to endure prolonged and possibly life-threatening periods of deprivation, and their "victory" will come at a quite high and needless cost.

### III

Despite the clear intent of these cases, the majority now concludes that a claim, regardless of its public importance and potential for sweeping impact, will fail to meet the "capable of repetition, yet evading review" exception merely because it is likely that some future litigant will be able to bring the same claim. To be sure, a moot claim should not be reviewed under this exception if there is not a minimum assurance that the parties have "hotly litigated" the case. Moreover, there is little reason to apply the exception to consider the merits of a claim that is unlikely to arise again or that does not involve an ongoing government program. See, e.g., *Sobocinski* v. *Freedom of Information Commission*, 213 Conn. 126, 135–36, 566 A.2d 703 (1989). When the weighing of all these factors demonstrates that the claim is worthy of review, however, it is mis-

guided to deny such review merely because another party may eventually bring a similar claim.

In this case, the weighing of all the relevant factors indicates that the plaintiff's claim is reviewable under the "capable of repetition, yet evading review" exception to the mootness doctrine. As stated previously, the plaintiff satisfies the first element because the claim likely will avoid meaningful review in future cases. Additionally, the combined magnitude of the other two factors compensates for any "reduced weight" of the first factor. See *Delevieleuse* v. *Manson*, supra, 184 Conn. 437 n.2.

The second element strongly weighs in favor of review because this claim involves an ongoing government program that involves thousands of individuals. Of those individuals who are denied benefits under the general assistance program, surely many, like the plaintiff, are denied them solely because of the SSI benefits received by their dependent children. Thus, the present case likely will repeat in the future.[4] Further, as the majority concedes, "the plaintiff certainly would qualify as a surrogate for other general assistance recipients."

Likewise, the third element strongly weighs in favor of review. As stated above, the general assistance program involves thousands of people in this state. Many individuals are able to procure the basic necessities of life from such benefits. Other persons are disqualified from this program, however, because, like the plain-

---

[4] Indeed, both parties urge us to decide the issue. The state, in advising this court that the case had become moot, wrote that the "Department of Social Services recognizes the importance of this case, and the fact that it is easily capable of repetition. Especially due to the breadth of the trial court's ruling, the Department would like to proceed to a consideration of the merits of this appeal." The legal aid organization representing the plaintiff, Connecticut Legal Services, Inc., similarly agreed during oral argument that the issues presented by the appeal were important and should be decided by this court.

tiff in this case, their children receive SSI benefits from the federal government. Thus, this case involves a public concern of the highest order: the ability of individuals to receive the most rudimentary levels of assistance. Accordingly, I would reach the merits of this appeal.