[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
Before the court is a complaint seeking injunctive and declaratory relief regarding the construction and funding of a minor league baseball stadium in Norwich, Connecticut, now known as Dodd Memorial Stadium, and current home of the Norwich Navigators. The plaintiffs[1] brought this action pursuant to General Statutes § 22a-16 against numerous defendants including the Department of Economic Development (DED), the Corporation for Regional Economic Development (CRED), Norwich Community Development Corporation (NCDC), and C.R. Klien, Inc., the general contractor of the stadium.
According to the complaint, the facts are as follows. NCDC owns a parcel of land in Norwich, Connecticut on which a baseball stadium now exists. At some point before the actual construction of the stadium, CRED applied for a 6 million dollar grant from the DED to construct the stadium at the site. Under the Connecticut Environmental Policy Act (CEPA), § 22a-1 et. seq., and relevant regulations, the defendants, particularly the DED as the sponsoring state agency of the project, were required to conduct extensive environmental studies before taking any action "which may significantly affect the environment." General Statutes § 22a-1b(b). On September 29, 1994, the DED eventually rendered a decision, after public comment, finding that the stadium would have no significant environmental impact on the area. This finding is called a FONSI, an acronym for "finding of no significant impact." The DED's finding was eventfully reviewed and accepted by the State Office of Policy and Management (OPM).
The plaintiffs allege that the DED's evaluation on which its FONSI was founded "[was] inadequate and incomplete and the process and procedure under which said evaluation is prepared" violates state environmental statutes and regulations. Based on this allegation, the plaintiffs pray for this court to enjoin the expenditure of any public funds to build or construct the project until the completion of an adequate CT Page 10753 environmental study. The plaintiffs also seek a declaratory judgment finding that "[t]he environmental evaluation prepared in connection with this project is incomplete and inadequate to determine that the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment and destruction has been maintained and a FONSI is appropriate." (Plaintiff's prayer for relief, No. 2).
By a motion dated May 5, 1995 and filed with the court on May 8, 1995, the defendant DED moved to dismiss the complaint on the ground that the case is moot. In its briefs and through supporting affidavits, the DED notes that all of the funds for the stadium have been expended, and that the plaintiffs claim for injunctive relief is moot because the stadium is fully constructed. In addition, the DED asserts that the plaintiffs claim for declaratory relief is also moot because DED's FONSI has already been received, approved, and accepted by the OPM on October 19, 1994 in compliance with all statutory and regulatory mandates.
The plaintiffs oppose DED's motion to dismiss on the ground that the issues involved in this case, mainly the compliance with environmental review and impact mandates under CEPA are capable of repetition, yet evading review, and thus not moot.[2]
 DISCUSSION
"A motion to dismiss is the appropriate vehicle for challenging the jurisdiction of the court." Zizka v. WaterPollution Control Authority, 195 Conn. 682, 687, 490 A.2d 509
(1985). "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v.Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). "[M]ootness implicates the jurisdiction of the court. It is a well-settled general rule that the existence of an actual controversy is an essential requirement to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In the absence of an actual and existing controversy for us to adjudicate . . . the courts of CT Page 10754 this state may not be used as a vehicle to obtain judicial opinions upon points of law. . . ." (Citations omitted; internal quotation marks omitted.) Goodson v. State,228 Conn. 106, 115, 635 A.2d 285 (1993).
The plaintiffs' complaint admits that the FONSI was approved by OPM as it required by General Statutes §§ 22a-1e
and 22a-1d(b). (Complaint, paragraph 18). The Department of Environmental Protection (DEP) regulations allow the DED to go ahead with the project once the OPM approves of the DED's finding of no significant impact. See Reg. Conn. State Agencies, § 22a-1a-10 (e). As the complaint states, OPM approved the DED's FONSI on October 19, 1994. Thus, this case is arguably moot because the court is left without any means to effectuate any relief even if it is found that the CEPA was violated. "When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." In re Romance M., 229 Conn. 345, 357,641 A.2d 378 (1994).
The plaintiffs, nonetheless, seek this court to issue a declaratory ruling on the DED's alleged violation of the CEPA. The plaintiffs rely on an exception to the mootness doctrine which would allow this court to issue a ruling provided that the controversy at issue is "capable of repetition, yet evading review." The plaintiffs assert that the DED violated the CEPA when it issued a FONSI instead of conducting a more thorough environmental impact review. The plaintiffs also claim that the defendants further violated state environmental laws by commencing clearing activities on the subject land, funded by privately-held monies of the NCDC, even before the FONSI was issued. Thus, the plaintiffs allege that the premature clearing prevented the state from conducting a through and meaningful review of environmental impact because some "impact" had already occurred before the final FONSI was issued.[3]
Recently, our Supreme Court noted:
 Our cases reveal that for an otherwise moot question to qualify for review under the `capable of repetition, yet evading review' exception, it must meet three requirements. First, the challenged action, or the effect of the challenged CT Page 10755 action, by its very nature must be of limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot.
(Emphasis added.) Loisel v. Rowe, 233 Conn. 370, 382-383
(1995).
Applying the three-part test to the facts of this case, the plaintiffs have failed to meet the requirements that would permit this court to rule on their otherwise moot question. First, the plaintiffs assert that the speed in which the stadium went up, coupled with the fact that private funds were used to finance the clearing of the land in alleged violation of the spirit of the CEPA, make this case an appropriate vehicle to review the meaning and intent of the CEPA. The court disagrees. "Most cases in which review has been undertaken despite a claim of mootness implicitly recognize the existence of functionally insurmountable time constraint." Id., 383. In this case, the OPM approved the DED's FONSI in October 1994, yet this complaint was not filed until December of that same year. The fact that some clear cutting might have transpired in the summer of 1994, through use of private and not state funds, before an environmental review was complete lends this court to postulate that the plaintiffs could have perhaps sought an injunction at that point in time instead of now trying to get declaratory relief. Thus, the history of this case, even if the same facts were repeated in a similar situation in the future, does not lend itself to the conclusion that any time constraints imposed are insurmountable. As the defendant points out in its reply brief, there were numerous times, including at the local administrative level, where the plaintiffs could have intervened in order to make their concerns known. (Carberry Affidavit, exhibit 1.)[4]
CT Page 10756
In order to properly analyze the second prong of the three-part test annunciated in Loisel, the court must ask itself two other questions: "(1) whether the question presented will recur at all; and (2) whether the interests of the people likely to be affected by the question presented are adequately represented in the current litigation." Loisel v.Rowe, supra, 233 Conn. 384. In their brief, the plaintiffs write that "[i]t is reasonable to expect that, for projects like the Norwich stadium where funding comes from both state and non-state sources, developers will undermine the CEPA review process by commencing activity, using non-state funds, before the required environmental review has been completed." (Plaintiffs Objection to Defendant's Motion to Dismiss, dated May 16, 1995, p. 13). The plaintiffs make a valid point, but the Supreme Court has also noted that "[t]he doctrine must address not only the question of whether the mooted claim is likely to arise again, but also the question of to whom the claim is likely to apply." (Emphasis in original.) Loisel v.Rowe, supra, 385. The court makes such an inquiry "to ensure that judicial decisions which may affect the rights of others are forged in hot controversy, with each side fairly and vigorously represented." (Internal quotation marks omitted.)Loisel v. Rowe, supra, 385.
Although the test does not require that the identical parties be likely be affected in the future, "[t]here is . . a need for some nexus between the litigating party and those people who may be affected by the court's ruling in the future." Loisel v. Rowe, supra, 386. With the exception of the plaintiff Fromer, all of the other named plaintiffs are either abutters to the stadium, or live a short distance away. However, the CEPA has a wide application, and the statute itself allows anyone to file suit on behalf of the public trust. Thus, it is unlikely that these plaintiffs, who are interested in their own neighborhoods, can be allowed to proceed in this declaratory action to determine the application of the CEPA to future situations that may or may not have similar facts and concerns. Other unknown plaintiffs, in the context of an ongoing CEPA case, might be in a better legal position to litigate the issues raised by the plaintiffs in their pursuit of a declaratory ruling in the context of a hot controversy instead of here, where the project is complete and the court can offer no real relief. CT Page 10757
Lastly, there can be no doubt that the proper application of the CEPA is of immense public importance. In passing the CEPA, the legislature determined in its policy statement that:
 [t]he general assembly finds that the growing population and expanding economy of the state have had a profound impact on the life-sustaining natural environment. The air, water, land and other natural resources, taken for granted since the settlement of the state, are now recognized as finite and precious. It is now understood that human activity must be guided by an in harmony with the system of relationships among the elements of nature. . . .
General Statutes § 22a-1
"Sheer public importance, however, cannot remedy a failure to satisfy the other [parts of the three-part test]. Whether the court can review an otherwise moot claim `turns not only on the importance of the issue . . . that the plaintiff has raised but also on a determination that his [or her] case satisfies the overall test of `capable of repetition, yet evading review.'" Loisel v. Rowe, supra, 387.
The plaintiffs have failed to meet two of the three factors necessary for this court to review an otherwise moot question. The issue before the court is therefore moot, and not capable of review in this action.
CONCLUSION
For the reasons stated, the defendant's motion to dismiss is granted.
Hurley, J.