WILBERT PEART *v.* PSYCHIATRIC SECURITY
REVIEW BOARD ET AL.
(14881)

Heiman, Spear and Spallone, Js.

Argued March 25—officially released June 18, 1996

*William B. Wynne*, with whom was *Edward Mattison*, for the appellant (plaintiff).

*Patrick B. Kwanashie*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellees (defendants).

SPEAR, J. The plaintiff appeals from the judgment of the trial court dismissing his appeal from the decision of the defendant psychiatric security review board (board). The board denied a request to transfer the plaintiff, who had been found not guilty of arson in the first degree by reason of mental illness, from a maximum security hospital to a less restrictive facility. Subsequent to the filing of his appeal, the plaintiff was transferred to a less restrictive facility. We conclude that his claims are moot.[1]

The record discloses the following relevant facts and procedural history. In September, 1991, the court committed the plaintiff to the jurisdiction of the board for a period not to exceed twenty-five years. The board immediately placed the plaintiff at the Whiting Forensic Institute (Whiting),[2] the state's maximum security hospital for persons acquitted of charges because of a mental disease or defect.

In March and May, 1994, physicians at Whiting recommended that the plaintiff be transferred to Fairfield Hills Hospital (Fairfield Hills), a less restrictive facility.

---

[1] The plaintiff claims that the trial court improperly failed to find that the board (1) did not base its decision on substantial evidence, (2) improperly substituted its own opinions for those of expert witnesses, and (3) was required to reveal its special knowledge and expertise and give notice of those facts material to its decision.

[2] The Whiting Forensic Institute is now the Whiting Forensic Division of the Connecticut Valley Hospital.

The board considered this recommendation on May 20, 1994, at a hearing pursuant to General Statutes § 17a-585.[3] Two physicians from Whiting testified that the plaintiff had responded well to treatment and that he would not pose a danger to himself or others if transferred to Fairfield Hills. One of those physicians testified, however, that the plaintiff had a history of escapes from other facilities. A physician from Fairfield Hills testified as to his concern about the plaintiff's desire to wear symbols of white supremacy. He testified that he did not believe this behavior to be significant because it could be treated at Fairfield Hills. Other evidence introduced at the hearing included transcripts and exhibits from prior hearings conducted by the board.

In a memorandum of decision dated June 27, 1994, the board denied the request to transfer. The memorandum summarized the evidence, referenced the plaintiff's prior history, addressed the plaintiff's social behavior, and alluded to the testimony concerning the symbols of white supremacy worn by the plaintiff. The board concluded that "while [the plaintiff] has made progress in his treatment, he has not demonstrated a sufficient level of socially appropriate behavior and insight into interpersonal relationships to be safely treated in a setting less restrictive than maximum security." The board further concluded that because of his mental condition, "he is potentially so violent and an AWOL risk constituting a threat to public safety that he requires confinement in maximum security."

On appeal to the trial court, the plaintiff claimed that the board improperly ignored the expert testimony of the physicians who recommended his transfer. The trial court, in dismissing the appeal, found that the board

---

[3] General Statutes § 17a-585 provides in relevant part that "[t]he board shall conduct a hearing and review the status of the acquittee not less than once every two years. . . ." General Statutes § 17a-596 details the procedures that apply to these hearings.

was not required to accept the physicians' testimony. After the plaintiff filed his appeal to this court, Whiting again applied to the board to transfer the plaintiff to a less restrictive hospital. The board granted the application and ordered that the plaintiff be transferred to the nonmaximum security division of the Connecticut Valley Hospital, a less restrictive setting equivalent to Fairfield Hills.[4]

Mootness implicates the subject matter jurisdiction of this court. *Ayala* v. *Smith*, 236 Conn. 89, 93, 671 A.2d 345 (1996); *First Trust National Assn.* v. *Hitt*, 36 Conn. App. 171, 174, 649 A.2d 798 (1994). We will not decide questions where there exists no actual controversy or where no actual or practical relief can follow from our determination. *Sobocinski* v. *Freedom of Information Commission*, 213 Conn. 126, 134, 566 A.2d 703 (1989); *Cole* v. *Planning & Zoning Commission*, 40 Conn. App. 501, 505, 671 A.2d 844 (1996). "An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal." *Sobocinski* v. *Freedom of Information Commission*, supra, 135. Moreover, " '[w]hen, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot.' " *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995), quoting *In re Romance M.*, 229 Conn. 345, 357, 641 A.2d 378 (1994).

We cannot grant any practical relief in this case. The relief originally sought by the plaintiff in his appeal was a decision ordering his transfer to a less restrictive hospital. The plaintiff has since obtained the requested relief. His claims are, therefore, moot, and we are deprived of subject matter jurisdiction.

The plaintiff, nevertheless, contends that he will suffer "collateral legal disabilities" unless we vacate the

---

[4] Fairfield Hills was closed as part of the consolidation of the state's mental health facilities.

board's June 27, 1994 memorandum of decision and the findings made therein. At oral argument,[5] the plaintiff asserted that the board's findings that he was an escape risk and wore symbols of white supremacy will adversely affect him at any future hearing concerning his confinement in a state mental facility. He argues that the removal of these collateral legal disabilities by vacating these findings is practical relief. We disagree.

After the trial court issued its memorandum of decision, the board granted a second application to transfer the plaintiff to a less restrictive hospital. It is clear, then, that the findings made by the trial court in its memorandum did not adversely affect the plaintiff. In fact, the weight of the findings that the plaintiff now requests we vacate were greatly dissipated by the board's reevaluation and recent determination that he no longer requires confinement in a maximum security hospital.

Additionally, we find no authority that grants us the power to vacate a memorandum of decision and expunge the findings of fact contained therein. The plaintiff, at oral argument, relied solely on our decision in *Altberg* v. *Paul Kovacs Tire Shop, Inc.*, 31 Conn. App. 634, 642, 626 A.2d 804 (1993), to support his argument. That decision, however, stands only for the well settled proposition that this court has the power to "change . . . a *judgment* [to effect] justice . . . ." (Emphasis added.) Id. The decision in *Altberg* does not provide us with the authority to vacate a memorandum of decision and to expunge the findings of fact.

The plaintiff last argues that his claims on appeal fall within the "capable of repetition, yet evading review" exception to the mootness doctrine. We disagree.

---

[5] Because the issue of mootness arose after the parties had submitted their briefs to this court, we requested that the parties be prepared to address the issue at oral argument.

"[F]or an otherwise moot question to qualify for review under the 'capable of repetition, yet evading review' exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance." *Loisel* v. *Rowe*, supra, 233 Conn. 382. All three requirements must be satisfied in order for this exception to the mootness doctrine to apply. Id., 382–83.

The plaintiff's claims[6] center around the board's substitution of its own opinion for those of the physicians who offered expert testimony at the plaintiff's hearing. While the issue of whether the board must accept the testimony of expert witnesses may arise in the future, there is not a strong likelihood that a substantial majority of cases raising this issue will become moot before appellate litigation can be concluded. The plaintiff's claims became moot only after Whiting reapplied to have the plaintiff transferred, the board reevaluated the plaintiff's condition, and then determined that the plaintiff was ready to be transferred to a less restrictive hospital. It does not seem likely that a substantial majority of cases, where the board initially denies a request to transfer, will proceed along this procedural path. We conclude that the first *Loisel* factor is not satisfied and that the "capable of repetition, yet evading review" exception, therefore, does not apply. Having reached

---

[6] See footnote 1.

this conclusion, we need not address the two remaining requirements.

The appeal is dismissed.

In this opinion the other judges concurred.