******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IAN COOKE *v.* COMMISSIONER OF CORRECTION
## (AC 38272)

Lavine, Devlin and Beach, Js.

*Syllabus*

The petitioner sought a writ of habeas corpus, claiming that his trial counsel provided ineffective assistance. The habeas court rendered judgment denying the habeas petition and, thereafter, denied the petition for certification to appeal, and the petitioner appealed to this court. The petitioner subsequently filed an application for a fee waiver and attached thereto an affidavit requesting certification of additional issues on appeal. Although the waiver application was granted, the court did not initially rule on the petitioner's request for certification of additional issues on appeal, and the petitioner subsequently filed a motion for articulation requesting that the court rule on his request, which the court treated as a motion to amend the petition for certification and granted. On appeal, the respondent Commissioner of Correction claimed that the habeas court, having previously denied the petition for certification to appeal, lacked jurisdiction to allow the petitioner to amend his petition for certification to appeal. *Held*:

1. The respondent's claim that the habeas court lacked jurisdiction to allow the petitioner to amend his petition for certification to appeal was unavailing: that court's ruling did not implicate the four month jurisdictional limit of the applicable rule of practice (§ 17-4) because courts have continuing jurisdiction to fashion appropriate remedies pursuant to their inherent powers, and its ruling allowing the petitioner to amend his petition for certification to appeal was merely a clarification of an ambiguity in the record concerning which claims the petitioner had preserved for appeal, and although the petitioner timely raised claims in his petition for certification to appeal and his waiver application, the court had ruled on only the former, and the issues raised in his application went unaddressed by the court, through no fault of the petitioner, until he filed a motion for articulation; accordingly, the court did not open a twenty-two month old judgment but, rather, addressed an overlooked petition for certification to appeal that previously had been filed.

2. The habeas court did not abuse its discretion in denying the habeas petition and concluding that trial counsel's performance was not deficient:

   a. The petitioner could not prevail on his claim that the habeas court erred by not analyzing whether the cumulative effect of his trial counsel's alleged errors constituted prejudice under *Strickland* v. *Washington* (466 U.S. 668); the court considered and rejected multiple claims of ineffective assistance that the petitioner alleged against his trial counsel, noting that the state presented a strong case against the petitioner, our Supreme Court has repeatedly declined to adopt a cumulative error analysis, and it was not within the province of this court to reevaluate the decisions of our Supreme Court.

   b. The petitioner's claim that his trial counsel was ineffective by failing to ensure that he was competent to stand trial was unavailing; although the petitioner claimed the court did not consider evidence that he suffered from amnesia when the crimes were committed and throughout his criminal trial, the petitioner's trial counsel testified at the habeas trial that he had reviewed three competency evaluations, all of which indicated that the petitioner was competent to stand trial and capable of assisting his attorney, the court found that trial counsel's testimony was credible and that the petitioner was intelligent and able to understand the proceeding, and that the petitioner presented no evidence to corroborate his amnesia claim or indicating what an additional investigation would have uncovered had counsel undertaken such steps, and the petitioner failed to demonstrate that that finding of the habeas court was clearly erroneous.

3. The petitioner could not prevail on his claim that the habeas court abused its discretion in denying his petition for a writ of mandamus to obtain legal assistance in preparing his appellate brief and oral argument:

a. Contrary to the claim of the respondent, the petitioner's claim was not moot because it fell within the capable of repetition, yet evading review exception to the mootness doctrine; the petitioner's claim related to an inherently limited action that would likely be moot in a substantial majority of cases, the petitioner alleged an ongoing constitutional violation in which our correctional facilities systematically deny inmates meaningful access to the courts and, thus, this issue would be likely to arise any time that an inmate proceeds self-represented, and the petitioner raised a question of public importance because he alleged a serious constitutional violation.

b. The habeas court did not abuse its discretion in denying the petition for a writ of mandamus; the appointment of counsel for habeas petitioners satisfies the requirements of our state constitution and *Bounds* v. *Smith* (430 U.S. 828), which provides that inmates have a constitutional right to access to the courts, the petitioner was not deprived of his rights because he had the option of appointed counsel at his habeas trial and on appeal but elected to proceed self-represented, *Bounds*, which affords the states discretion to determine how to provide access to the courts, and its progeny provide no specific requirement that the states provide law libraries or other means of legal research to inmates, and, therefore, the remedy sought was not a mandatory duty of the state and the petitioner had no clear right to have the duty performed.

Argued September 23—officially released December 17, 2019

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Cobb, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court; subsequently, the court, *Cobb, J.*, granted the petition for certification to appeal; thereafter, the court, *Bright, J.*, denied the petition for a writ of mandamus filed by the petitioner. *Affirmed.*

*Ian Cooke*, self-represented, the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, with whom were *Matthew A. Weiner*, assistant state's attorney, and, on the brief, *William Tong*, attorney general, *Michael L. Regan*, state's attorney, and *Lawrence J. Tytla*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

DEVLIN, J. The petitioner, Ian Cooke, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner asserts that (1) his claims were properly certified for appellate review by the habeas court, (2) the cumulative effect of his trial counsel's errors deprived him of effective assistance of counsel, (3) his trial counsel was ineffective in not ensuring that he was competent to stand trial, and (4) the court erred in failing to issue a writ of mandamus directing the Office of the Chief Public Defender to provide him with legal assistance to pursue the present appeal. The respondent, in turn, argues that the habeas court lacked jurisdiction to grant the petition for certification to appeal more than four months after its initial denial of certification to appeal. In response, the petitioner contends that the court had continuing jurisdiction to grant the petition for certification to appeal. We agree that the court had continuing jurisdiction to grant the petition for certification to appeal, but conclude that it did not abuse its discretion in denying both the petition for a writ of habeas corpus and the petition for a writ of mandamus. Accordingly, we affirm the judgment of the court.

The following facts and procedural history are relevant to this appeal. Following a jury trial, the petitioner was convicted of murder in violation of General Statutes § 53a-54a, capital felony murder in violation of General Statutes § 53a-54b (7), and possession of a sawed-off shotgun in violation of General Statutes § 53a-211 (a). The court sentenced him to a total effective term of life imprisonment without the possibility of parole. The petitioner's conviction was affirmed on direct appeal. *State* v. *Cooke*, 134 Conn. App. 573, 581, 39 A.3d 1178, cert. denied, 305 Conn. 903, 43 A.3d 662 (2012). In its resolution of that appeal, this court set forth the following facts, which are relevant to this appeal.

"Sometime after 3 p.m. on May 27, 2006, the town of Groton dispatch center received a 911 call from 1021 Pleasant Valley Road reporting that one Gregory Giesing had been shot at his residence. Police officers, including Officer Sean Griffin, arrived at the scene, and Gregory Giesing's wife, Laurel Giesing, reported that she had observed in her driveway after she had found her husband shot a 'dark, silver grayish' Jeep with thick piping on the front. After going through the residence to ensure that it was safe, Griffin went to the lower unit of the residence and found Derek Von Winkle, Gregory Giesing's stepbrother, who also had been shot. Shortly thereafter, fire and medical personnel arrived.

"One of the responders from the fire department informed Griffin that there had been a stabbing at the LaTriumphe Apartments, which was near the Giesings' residence. The police, including Griffin, responded to

that location, entered an apartment through an open sliding door and found on the living room floor the [petitioner], whose hand and cheek were injured. The police spoke with the [petitioner's] father, who had called 911 and had told the dispatcher that his son may have been stabbed by a drug dealer or drug dealers. Based upon the conversation between the police and the [petitioner's] father, Griffin then went outside to the parking lot to look for the Jeep that Laurel Giesing had described. Griffin located a silver gray Jeep with a 'brush guard,' and observed blood on the exterior driver's side and on the driver's side interior compartment of the vehicle. Laurel Giesing was later shown the vehicle and, after examining it, stated that it looked 'very similar' to and 'the same' as the vehicle she saw at her residence after her husband had been shot. Additionally, a search of the general outside area, including a wooded area, around the [petitioner's] apartment revealed apparently bloodstained duffle bags containing illegal drugs and a disassembled shotgun.

"An associate medical examiner for the state determined that Gregory Giesing died of a gunshot wound to the chest. The medical examiner concluded that Von Winkle died of a shotgun wound to the neck and chest. . . .

"Several items of evidence, including three known samples of DNA from Von Winkle, Gregory Giesing and the [petitioner], were submitted to the state forensic science laboratory for DNA analysis. Nicholas Yang, a forensic science examiner, performed the tests. At trial, he testified as to his findings. Yang determined that the [petitioner's] DNA was consistent with that found on the exterior of a duffle bag found outside the [petitioner's] apartment complex, the doorknob to Von Winkle's apartment, multiple locations on pants retrieved from Gregory Giesing's body, the wooden deck area of Gregory Giesing's residence, a part of the floor mat of the Jeep and on various parts of the disassembled shotgun. The [petitioner] could not be eliminated as a source of DNA on the zipper of a Dudley bag, a reddish-brown stain on a knife found near Gregory Giesing's body, a blood-like substance taken from the interior door of Gregory Giesing's apartment, the steering wheel of the Jeep, a hacksaw from the apartment in which the [petitioner] was found, two swabs from the floor mat of the Jeep and the brake pedal from the Jeep." (Citations omitted; footnote omitted.) Id., 575–77.

On August 4, 2011, the petitioner filed a self-represented petition for a writ of habeas corpus. Subsequently, Attorney John Williams was appointed to represent the petitioner. Williams never filed an amended petition. When asked by the habeas court, *Cobb, J.*, to clarify the claims raised in the petition, Williams presented three claims that the petitioner's trial counsel, Attorney John Walkley, was ineffective by: "(1)

failing to adequately investigate and prepare the case for trial, (2) failing to adequately challenge the prosecution's case and present the defense's case at trial and (3) failing to assure that the petitioner was competent to stand trial." In addition, the petitioner's brief to the habeas court raised two more claims that Walkley was ineffective in cross-examining one witness and impeaching another witness.

The habeas court conducted a five day trial between March 20, 2014, and September 10, 2014. On July 8, 2015, the habeas court issued a memorandum of decision denying the petition. The habeas court concluded that, as to each of the petitioner's claims, he had failed to prove either that Walkley's performance was deficient or that the petitioner was prejudiced by Walkley's performance, as required by *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to establish ineffective assistance of counsel. The habeas court also noted that the petitioner had offered little to no evidentiary support for most of his claims.

Shortly thereafter, on July 13, 2015, Williams filed a petition for certification to appeal setting forth two issues: "Did [the habeas] [c]ourt err in [1] requiring petitioner to prove prejudice from trial counsel's failure to have a competency exam, when such retrospective proof is impossible and prejudice is presumed; and [2] in failing to address counsel's failure to visit the crime scene and test . . . both sound and sight?" The court denied the petition for certification to appeal on July 14, 2015.

On July 22, 2015, independently of Williams, the petitioner filed an application for waiver of fees, costs and expenses and appointment of counsel on appeal (waiver application). Attached to the waiver application, the petitioner included a document titled, "Affidavit in Support of Petition for Certification to the Appellate Court." In this affidavit, the petitioner requested certification to appeal on different grounds than those articulated by Williams. The petitioner sought certification to appeal on four other issues: (1) whether the court properly considered the petitioner's argument that he was not competent to assist Walkley; (2) whether the evidence, in the aggregate, supported the petitioner's theory that Walkley had not conducted a thorough and complete investigation of the blood and DNA evidence; (3) whether there were cumulative deficiencies in Walkley's representation and whether those numerous deficiencies, in the aggregate, prejudiced the petitioner; and (4) whether the court erred in not considering the totality of Walkley's alleged errors in conducting its *Strickland* analysis. While the habeas court did grant the petitioner's waiver application on July 27, 2015, there was no indication in the record at that time that the court had ruled on the petitioner's request for certification of additional issues on appeal.

On August 17, 2015, the petitioner filed his appeal. Subsequently, on November 5, 2015, Attorney Allison Near filed her appearance as appointed appellate counsel for the petitioner. On June 10, 2016, Near filed a motion for leave to withdraw as appointed counsel accompanied with an *Anders* brief.[1] The petitioner later filed, on January 4, 2017, a motion to remove Near as appointed counsel and to proceed self-represented. The court, *Bright, J.*, granted the petitioner's motion on March 6, 2017. Subsequently, the self-represented petitioner filed an appearance with this court on March 17, 2017.

On March 31, 2017, the petitioner filed a motion for articulation, requesting that the habeas court issue a ruling on his affidavit attached to his waiver application, which he had filed on July 22, 2015, that outlined additional issues for appeal. In a handwritten ruling added at the end of the petitioner's motion and dated May 9, 2017, the court, *Cobb, J.*, concluded that "[i]n view of the petitioner's status as a self-represented litigant, the [c]ourt treats this motion for articulation as a motion to amend his petition for certification to include additional issues on appeal, and grants it." Subsequently, on appeal, the petitioner has challenged the habeas court's judgment denying his petition for a writ of habeas corpus on the grounds raised in his affidavit.

On May 3, 2017, the petitioner filed a petition seeking a writ of mandamus to compel the Office of the Chief Public Defender to assist the petitioner's legal research. In his petition, the petitioner contended that he was incapable of conducting legal research, because the Department of Correction does not provide law libraries or online legal resources to its inmates and, as a result of his decision to proceed as a self-represented petitioner, he did not have access to outside legal assistance. Consequently, the petitioner argued that the lack of legal resources violated his federal and state constitutional right to have meaningful access to the courts and, thus, necessitated an order to compel legal assistance from the Office of the Chief Public Defender. On June 26, 2017, the court, *Bright, J.*, issued an oral decision from the bench, denying the petition for mandamus relief. In the present appeal, the petitioner challenges the court's ruling on his petition for a writ of mandamus.

I

Before we may reach the merits of the petitioner's appeal, we must first resolve the respondent's challenge to the subject matter jurisdiction of the habeas court, *Cobb, J.* The respondent argues that, by allowing the petitioner to amend his petition for certification to appeal on May 9, 2017, the habeas court effectively modified its July 14, 2015 denial of the petition for certification to appeal. The respondent argues that the

habeas court was without jurisdiction to modify this decision because, as this court has stated, General Statutes § 52-212a and Practice Book § 17-4 provide that unless "the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed." (Internal quotation marks omitted.) *Gordon* v. *Gordon*, 148 Conn. App. 59, 64, 84 A.3d 923 (2014). Thus, because the habeas court issued its May 9, 2017 decision well beyond this four month limit, the respondent argues that the court was without subject matter jurisdiction to grant certification to appeal.

We disagree with the respondent's contention. As we previously explained, following the habeas court's decision denying the petition for a writ of habeas corpus, Williams filed a petition for certification to appeal that was denied by the habeas court on July 14, 2015. Thereafter, the petitioner filed his waiver application on July 22, 2015. Attached to the waiver application was a document titled "Affidavit in Support of Petition for Certification to the Appellate Court" that requested that four grounds be certified for review. Although the waiver application was granted, no action was taken at that time on the petitioner's request for certification of additional issues on appeal. On March 31, 2017, the petitioner filed a motion for articulation requesting a ruling on the affidavit in support of certification of additional issues on appeal. On May 9, 2017, the habeas court treated the motion for articulation as a motion to amend the petition for certification and granted it.

Contrary to the respondent's claim, we do not interpret the May 9, 2017 ruling by the habeas court as implicating the four month jurisdictional limit of Practice Book § 17-4 because, "[e]ven beyond the four month time frame set forth in . . . § 17-4 . . . courts have continuing jurisdiction to fashion a remedy appropriate to the vindication of a prior . . . judgment . . . pursuant to [their] inherent powers . . . ." (Footnote omitted; internal quotation marks omitted.) *Bauer* v. *Bauer*, 308 Conn. 124, 130, 60 A.3d 950 (2013); see also Practice Book § 66-5 ("[t]he trial court may make such corrections or additions as are necessary for the proper presentation of the issues").

In the present appeal, the habeas court's ruling on May 9, 2017, was merely a clarification of the ambiguous record. Prior to its ruling, there was an ambiguity in the record concerning which claims the petitioner had preserved for his appeal. While the petitioner timely raised claims in both his petition for certification to appeal and his waiver application, the habeas court had ruled on only the former. For twenty-two months, through no fault of the petitioner, the issues raised in his waiver application went unaddressed by the court

until he filed a motion for articulation. Therefore, by allowing the petitioner to "amend" his petition for certification to appeal, the habeas court was, in effect, issuing a belated ruling to recognize the additional issues raised in the petitioner's waiver application. In other words, the court was not opening a judgment twenty-two months after the fact; instead, it was addressing an overlooked petition for certification to appeal that was filed twenty-two months previously. Consequently, there is no jurisdictional problem as the respondent contends.[2]

## II

The petitioner claims that the habeas court's May 9, 2017 order not only permitted him to expand the number of issues raised on appeal, but also granted the petition for certification to appeal. We agree that the decision was ambiguously written and the respondent concedes that it was "reasonabl[e] . . . [to believe] that the habeas court had *granted* certification to appeal . . . ." (Emphasis in original.) Therefore, we interpret the court's ambiguous ruling to have granted the petition for certification to appeal.

The petitioner asserts that the court abused its discretion by denying his petition for a writ of habeas corpus for two reasons: (1) Walkley's representation of him was ineffective due to cumulative deficiencies in Walkley's performance; and (2) Walkley's representation was ineffective because Walkley did not ensure that the petitioner was competent to stand trial.

"As the United States Supreme Court articulated in *Strickland* v. *Washington*, [supra, 468 U.S. 687], [a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . Put another way, the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Antwon W.* v. *Commissioner of Correction*, 172 Conn. App. 843, 849–50, 163 A.3d 1223, cert. denied, 326 Conn. 909, 164 A.3d 680 (2017).

## A

In its memorandum of decision, the habeas court carefully considered and rejected multiple claims of

ineffective assistance of counsel that the petitioner alleged against Walkley. The habeas court stated, and we agree, that the state presented a very strong case against the petitioner. The petitioner claims, however, that the court erred by not analyzing whether the cumulative effect of Walkley's alleged errors at trial constituted prejudice under *Strickland*. This claim of error is resolved by our prior decisions. "Our appellate courts . . . have consistently declined to adopt this [cumulative error analysis]. When faced with the assertion that the claims of error, none of which individually constituted error, should be aggregated to form a separate basis for a claim of a constitutional violation of a right to a fair trial, our Supreme Court has repeatedly decline[d] to create a new constitutional claim in which the totality of alleged constitutional error is greater than the sum of its parts." (Internal quotation marks omitted.) Id., 850–51; see also *State* v. *Tillman*, 220 Conn. 487, 505, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992). "Because it is not within the province of this court to reevaluate decisions of our Supreme Court . . . we lack authority under the current state of our case law to analyze the petitioner's ineffective assistance claims under the cumulative error rule." (Citation omitted; footnote omitted.) *Antwon W.* v. *Commissioner of Correction*, supra, 851. Therefore, because the petitioner is effectively asking this court to overturn our Supreme Court's precedent; see *State* v. *Tillman*, supra, 505; we cannot grant the relief he seeks, and his first claim fails.

B

The petitioner next claims that the habeas court erroneously concluded that Walkley was not deficient and that the petitioner was not prejudiced by Walkley's failure to ensure that the petitioner was competent to stand trial. The petitioner asserts that the habeas court neglected to consider evidence that the petitioner suffered from amnesia from the time that the crimes were committed and continued to suffer from amnesia throughout his trial. The petitioner further claims that the evidence presented to the court demonstrated that Walkley failed to investigate properly the petitioner's mental state and, if Walkley had done so, he would have discovered that the petitioner was incompetent to stand trial. Accordingly, the petitioner argues that the habeas court erred by overlooking this evidence and determining that Walkley had not rendered ineffective assistance of counsel. We are not persuaded.

The standard of review pertaining to claims of ineffective assistance of counsel is well settled. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge,

as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012).

In analyzing the performance prong of *Strickland*, our focus is on "whether counsel's assistance was reasonable considering all the circumstances. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . .

"Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citation omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 679–80.

The following additional facts are relevant to our resolution of the petitioner's claim of ineffective assistance of counsel. At the habeas trial, Walkley testified that he received two competency evaluations from the petitioner's previous trial counsel. Both evaluations, conducted in 2006 and 2007, indicated that the petitioner was competent to stand trial and capable of assisting his attorney. Despite never having been personally concerned that the petitioner was incompetent, Walkley testified that he sought the advice of a third psychiatric expert. Although the report from this evaluation was not entered into evidence, Walkley testified that nothing contained in the report led him to believe that the petitioner was incompetent.

The habeas court concluded that the petitioner "presented no evidence at trial to corroborate his amnesia claim or to establish that the petitioner was not competent to stand trial . . . [nor any] evidence to prove what any additional investigation or an additional mental health evaluation would have uncovered had such steps been undertaken by counsel." Instead, the court found that Walkley's testimony was credible and simi-

larly concluded that "the petitioner was very intelligent and able to communicate and understand the proceedings." Thus, the court concluded that the petitioner had not shown any error committed by Walkley to satisfy the first prong of *Strickland*. The court also noted that the petitioner failed to prove the prejudice prong of *Strickland* because he had neither proven that he suffered from amnesia nor established that his amnesia would have rendered him incompetent for trial. Accordingly, the court determined that the petitioner had not demonstrated that his counsel was ineffective. We agree.

General Statutes § 54-56d (a) provides that "[a] defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or her or to assist in his or her own defense." Furthermore, "[a] defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue." General Statutes § 54-56d (b). "The standard we use to determine whether a defendant is competent . . . is whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." (Citations omitted; internal quotation marks omitted.) *State* v. *Dort*, 315 Conn. 151, 170, 106 A.3d 277 (2014).

On appeal, the petitioner contends that the evidence presented to the habeas court supported a finding that Walkley neglected to fully investigate the petitioner's mental state. Despite two prior competency evaluations that deemed the petitioner competent to stand trial and a third evaluation ordered by Walkley that concurred, the petitioner argues that the habeas court should have found that Walkley inadequately examined the petitioner's mental state. According to the petitioner, had Walkley conducted an additional investigation, it would have revealed that the petitioner suffered from amnesia from the time that the crimes were committed and continued to suffer from amnesia throughout his trial. In light of this evidence, the petitioner claims that the habeas court should have found that the petitioner was incompetent to assist in his own defense. Further, the petitioner argues that, by failing to conduct an additional investigation, Walkley's performance was deficient and per se prejudicial. We disagree.

The petitioner's arguments are without merit. The crux of his arguments is that he presented evidence in support of his claims that was ignored by the habeas court. This claim, however, is directly contradicted by the habeas court's findings of fact. The habeas court

found that the petitioner presented no evidence to support his claim of ineffective assistance of counsel nor evidence of his amnesia. The petitioner, in effect, attempts to point to evidence in the record that simply does not exist. It is the sole province of the habeas court to admit evidence into the record and it "is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 677. The petitioner has asserted no basis for this court to determine that the habeas court's factual finding that the petitioner provided no evidence to support his claim was clearly erroneous. Likewise, we cannot conclude that the habeas court should have ruled in favor of the petitioner when there was no evidence to support the petitioner's position. Therefore, we conclude that the habeas court did not abuse its discretion in finding that Walkley's performance was not deficient, and we need not address the petitioner's arguments concerning prejudice. See *Antwon W.* v. *Commissioner of Correction*, supra, 172 Conn. App. 849–50.

## III

The last issue the petitioner raises on appeal is whether the court, *Bright, J.*, erred in denying his petition for a writ of mandamus to obtain legal assistance in preparing his brief and oral argument to this court. Before reaching this claim, we must address the respondent's argument that the petitioner's third claim is moot. The respondent contends that because the petitioner already has filed his brief and presented his argument, there is no practical relief that this court may grant and, thus, the petitioner's claim is moot. We disagree.

### A

Despite the respondent's argument that the petitioner's claim is moot, we are persuaded that the claim falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. See *Loisel* v. *Rowe*, 233 Conn. 370, 382–83, 60 A.3d 323 (1995). "To qualify under this exception, an otherwise moot question must satisfy the following three requirements: First, the challenged action, or the effect of the challenged action, by its very nature, must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) *Gainey* v. *Commissioner of Correction*, 181 Conn.

App. 377, 383, 186 A.3d 784 (2018).

"The first element in the analysis pertains to the length of the challenged action. . . . If an action or its effects is not of inherently limited duration, the action can be reviewed the next time it arises, when it will present an ongoing live controversy. Moreover, if the question presented is not strongly likely to become moot in the substantial majority of cases in which it arises, the urgency of deciding the pending case is significantly reduced." (Citations omitted; footnote omitted.) *Loisel* v. *Rowe*, supra, 233 Conn. 383–84.

The present appeal satisfies the first *Loisel* factor. Our rules of appellate practice necessitate that the petitioner file a brief and attend oral argument. Practice Book § 66-8 provides that an appeal may be dismissed for failure to file a brief within the forty-five day time limit imposed by Practice Book § 67-3. Similarly, Practice Book § 70-3 provides that the court may, for nonappearance of a party at oral argument, dismiss an appeal, decide the case solely on the briefs, or further sanction the nonappearing party. Our appellate procedural rules have the effect of creating an inherently limited timeframe in which the petitioner's appeal is prosecuted. The way the petitioner has raised this issue before this court, and enabled us to reach the merits of his claim, was by filing a brief and arguing his case.[3] In other words, it would be impossible for the petitioner, or any other litigant, to seek redress on this matter in a similar manner without mooting his claim. Therefore, the petitioner's claim relates to an inherently limited action that will likely be moot in a substantial majority of cases and satisfies the first *Loisel* factor.

The second factor "entails two separate inquiries: (1) whether the question presented will recur at all; and (2) whether the interests of the people likely to be affected by the question presented are adequately represented in the present litigation." *Loisel* v. *Rowe*, supra, 233 Conn. 384. "A requirement of the likelihood that a question will recur is an integral component of the 'capable of repetition, yet evading review' doctrine. In the absence of the possibility of such repetition, there would be no justification for reaching the issue, as a decision would neither provide relief in the present case, nor prospectively resolve cases anticipated in the future." Id. "Commonly referred to as the surrogacy concept, [the] second inquiry requires some nexus between the litigating party and those people who may be affected by the court's ruling in the future." (Internal quotation marks omitted.) *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 96 Conn. App. 496, 500–501, 900 A.2d 572, cert. denied, 280 Conn. 938, 910 A.2d 217 (2006).

In the present appeal, the petitioner alleges an ongoing constitutional violation in which our correctional facilities systematically deny inmates access to legal

research. The petitioner argues that the denial of access to legal research effectively has denied his right to meaningful access to the courts. Thus, this issue is likely to arise any time that an inmate decides to proceed self-represented. Furthermore, the *Loisel* court noted that cases brought by inmates represent one of the quintessential examples of an adequate surrogate for the second factor. *Loisel* v. *Rowe*, supra, 233 Conn. 386. We agree that the petitioner can serve as an adequate surrogate for other inmates who similarly decide to pursue their habeas claims self-represented and are met with the burden of conducting their own legal research. Thus, the petitioner's claim satisfies the second *Loisel* factor.

The third factor, "[t]he requirement of public importance is largely self-explanatory. Since judicial resources are scarce, and typically reserved for cases that continue to be contested between the litigants, this court does not review every issue that satisfies the criteria of limited duration and likelihood of recurrence." Id., 387. Typically, cases that raise a constitutional issue satisfy this factor. See, e.g., *In re Emma F.*, 315 Conn. 414, 425, 107 A.3d 947 (2015) (noting that appellant's constitutional claim of violation of free speech rights was matter of public importance); *State* v. *Mordasky*, 84 Conn. App. 436, 442, 853 A.2d 626 (2004) ("[f]inally, because the defendant has raised a constitutional issue with respect to his competence to enter into a plea agreement, he has presented an issue that qualifies as a question of public importance").

Applying these principles to the present case, we are persuaded that the petitioner raises a question of public importance. As noted previously, he has alleged a serious constitutional violation in that he has been deprived of his right to meaningful access to the courts. Recognizing the constitutional magnitude of this claim, we conclude that the petitioner has satisfied the third *Loisel* factor.

We conclude, therefore, that we have subject matter jurisdiction to hear the merits of the petitioner's appeal, because it is not moot under the "capable of repetition, yet evading review" exception to the mootness doctrine. We turn next to the petitioner's substantive claim.

B

"The requirements for the issuance of a writ of mandamus are well settled. Mandamus is an extraordinary remedy, available in limited circumstances for limited purposes. . . . It is fundamental that the issuance of the writ rests in the discretion of the court, not an arbitrary discretion exercised as a result of caprice but a sound discretion exercised in accordance with recognized principles of law. . . . That discretion will be exercised in favor of issuing the writ only where the plaintiff has a clear legal right to have done that which

he seeks. . . . The writ is proper only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy. . . . Even satisfaction of this demanding [three-pronged] test does not, however, automatically compel issuance of the requested writ of mandamus. . . . In deciding the propriety of a writ of mandamus, the trial court exercises discretion rooted in the principles of equity. . . . We review the trial court's decision, therefore, to determine whether it abused its discretion in denying the writ." (Citations omitted; internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Sewer Commission*, 270 Conn. 409, 416–17, 853 A.2d 497 (2004).

"In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Citation omitted; internal quotation marks omitted.) Id., 417. "Nevertheless, this court will overturn a lower court's judgment if it has committed a clear error or misconceived the law." *Morris* v. *Congdon*, 277 Conn. 565, 569, 893 A.2d 413 (2006).

In seeking mandamus relief from the habeas court, the petitioner argued that the state had deprived him of his right to meaningful access to the courts by not providing any means of legal research. It is well established that "prisoners have a constitutional right of access to the courts . . . [and that such access must be] adequate, effective and meaningful." (Citations omitted; internal quotation marks omitted.) *Bounds* v. *Smith*, 430 U.S. 817, 821–22, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977). "Decisions of the United States Supreme Court have consistently required [s]tates to shoulder affirmative obligations to assure all prisoners meaningful access to the courts. . . . *Bounds* does not [however] guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." (Citations omitted; internal quotation marks omitted.) *Washington* v. *Meachum*, 238 Conn. 692, 735–36, 680 A.2d 262 (1996).

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates

in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds* v. *Smith*, supra, 430 U.S. 828. Such assistance, however, may take many forms and "*Bounds* . . . guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis* v. *Casey*, 518 U.S. 343, 356, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). "Insofar as the right vindicated by *Bounds* is concerned, meaningful access to the courts is the touchstone . . . and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." (Citation omitted; internal quotation marks omitted.) Id., 351.

In the context of a habeas appeal, this court has held that the appointment of counsel for habeas petitioners satisfies the requirements of *Bounds* and our state constitution. *Sadler* v. *Commissioner of Correction*, 100 Conn. App. 659, 662–63, 918 A.2d 1033, cert. denied, 285 Conn. 901, 938 A.2d 593 (2007). Consequently, this court held in *Sadler* that the absence of a law library in our correctional facilities did not deprive a habeas petitioner of his constitutional rights because he had the option of appointed counsel but elected to proceed self-represented. Id., 663. The same situation applies in the present case.

In adjudicating the petition for a writ of mandamus, the court correctly applied the law and concluded that the petitioner had neither satisfied the first nor second prongs of *AvalonBay Communities, Inc.* v. *Sewer Commission*, supra, 270 Conn. 416–17. The court recognized that *Bounds* affords discretion to the states to determine how best to provide meaningful access to the courts. Moreover, the court noted that our state has exercised its discretion to satisfy the requirements of *Bounds* by providing appointed counsel to habeas petitioners and, as a result, the petitioner has no clear constitutional right to assistance with legal research in this matter. Thus, the court concluded that mandamus relief was improper and denied the petition. We agree.

*Bounds* and its progeny provide no specific requirement that the states provide law libraries or other means of legal research to inmates. E.g., *Lewis* v. *Casey*, supra, 518 U.S. 356. Further, our state has satisfied the requirements of *Bounds* by providing appointed counsel to habeas petitioners. *Sadler* v. *Commissioner of Correction*, supra, 100 Conn. App. 663. In the present case, the state provided the petitioner with meaningful access to the courts through the appointment of Williams to represent him at the habeas trial and Near to represent him on the habeas appeal. The petitioner has not presented a valid claim that his constitutional rights were

violated.[4] Thus, the remedy the petitioner sought was not a mandatory duty of the state and he had no "clear legal right to have the duty performed . . . ." See *AvalonBay Communities*, *Inc.* v. *Sewer Commission*, supra, 270 Conn. 417. Therefore, the court properly exercised its discretion by denying the petition for a writ of mandamus.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See *Anders* v. *California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

[2] We acknowledge that, by filing his own petition for certification to appeal, the petitioner arguably violated the prohibition on hybrid representation. See Practice Book § 62-9A ("a . . . habeas petitioner has no right to self-representation while represented by counsel"). Given the fact that the respondent did not object on this ground and the petitioner may, in fact, have been unrepresented when he filed his petition, we will consider his claims.

[3] We note that it has not been argued that any alternative vehicle exists to present this issue.

[4] The petitioner attempts, in his brief, to raise an independent state constitutional claim under *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992). The petitioner argues that article first, § 8, of the constitution of Connecticut guarantees the right to self-representation in criminal proceedings. Article first, § 8, of the constitution of Connecticut provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ." However, the petitioner misunderstands his procedural posture. As a habeas petitioner, he is party to a civil proceeding. Moreover, he is no longer an "accused" but, instead, is a person who has been convicted. Our courts have never applied article first, § 8, of the constitution of Connecticut to habeas petitioners, and we decline to do so now. Therefore, because his analysis of the Connecticut constitution is irrelevant to the present appeal, the petitioner has provided no independent state constitutional claim. Accordingly, we limit our review to the petitioner's federal constitutional claim. See *State* v. *Jarrett*, 82 Conn. App. 489, 498 n.5, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004). As discussed in part III B of this opinion, the petitioner's federal constitutional claim is without merit as well.