******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# IN RE ISABELLA S.*
## (AC 47764)

Bright, C. J., and Alvord and Westbrook, Js.**

*Syllabus*

The respondent parents appealed from the trial court's denial of their application for a declaratory judgment and a writ of mandamus, in which they sought to compel the Department of Children and Families to place their minor child in a residential treatment setting to address her mental health needs. The respondents claimed, inter alia, that the court had misinterpreted the meaning and the finality of the underlying decision by a hearing officer for the department, which had ordered the department to explore appropriate residential care for the child, who previously had been committed to the care and custody of the petitioner, the Commissioner of Children and Families. *Held*:

The trial court properly denied the respondents' application for a declaratory judgment and a writ of mandamus, as the hearing officer's decision contained no language expressly requiring the department to place the child in a residential treatment program but, rather, ordered the department to revise its existing treatment plan for the child and to explore the possibility of placing her in a residential treatment program, if such a placement was appropriate to achieving her reunification with the respondents.

The trial court did not abuse its discretion in determining that the extraordinary remedy of mandamus was inappropriate under the circumstances at issue, as the hearing officer's decision did not create a clear right in the respondents to the remedy they sought but, rather, granted them the right to have the department devise a new treatment plan and to continue to look into the possibility of residential placement for the child, after which the respondents could pursue further relief from the department if they remained unsatisfied with its efforts.

Argued January 15—officially released March 24, 2025***

---

 * In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

 ** The listing of judges reflects their seniority status on this court as of the date of oral argument.

 *** March 24, 2025, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Procedural History*

Petition by the Commissioner of Children and Families to adjudicate the respondents' minor child neglected, brought to the Superior Court in the judicial district of Litchfield, Juvenile Matters at Torrington, where the court, *Aaron, J.*, rendered judgment adjudicating the minor child uncared for and committed her to the custody of the petitioner; thereafter, the court, *Lobo, J.*, denied the respondents' application for a writ of mandamus to compel the petitioner to place the minor child in a residential treatment setting, and the respondents appealed to this court. *Affirmed.*

*Lisa M. Vincent*, with whom was *Ani A. Desilets*, for the appellants (respondents).

*Nisa J. Khan*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (petitioner).

*Eric J. Palladino*, for the minor child.

*Opinion*

WESTBROOK, J. In this child protection matter, the respondent parents, Billie Jean S. and Panyiotis S., appeal from the denial of their application for a writ of mandamus, in which they argued that the Department of Children and Families (department) was not providing their minor child, Isabella S., with appropriate mental health care.[1] They sought an order requiring the department to place Isabella in an appropriate residential treatment setting in accordance with a March 15, 2024 decision issued by a department hearing officer.

---

[1] Our Supreme Court has held that a ruling on an application for a writ of mandamus is an immediately appealable final judgment irrespective of whether the application is brought as an independent action or in the course of ongoing litigation. See *Wardell* v. *Killingly*, 96 Conn. 718, 115 A. 539 (1921) (relying in part on General Statutes (1918 Rev.) § 6065, now General Statutes § 52-493).

The respondents claim on appeal that the court (1) misinterpreted the meaning and the finality of the March 15, 2024 decision and (2) improperly concluded that a writ of mandamus was not the proper mechanism for seeking enforcement of the hearing officer's decision.[2] For the reasons that follow, we affirm the judgment of the court.[3]

The record reveals the following facts and procedural history. Isabella was adopted by the respondents in 2012 at the age of eighteen months following the termination of her biological parents' parental rights. Isabella has a history of significant mental health issues that include diagnoses of reactive attachment disorder, disruptive mood dysregulation disorder, oppositional defiant disorder, conduct disorder, traumatic stress disorder, developmental trauma, unspecified anxiety disorder and depressive disorder. She has exhibited serious disruptive behaviors including escalating anger, destruction of property, and physical and verbal aggression toward family members, particularly the respondent mother. The respondents have sought various treatments and services for Isabella. Due to her having repeatedly engaged in disruptive and violent behavior, she has required hospitalization on a number of occasions.

In April, 2023, Isabella, then twelve years old, was hospitalized overnight after she threatened to harm the

---

[2] In accordance with Practice Book § 67-13, the attorney for the minor child filed a statement adopting the brief of the petitioner, the Commissioner of Children and Families.

[3] We note that the respondents filed a motion to strike portions of the brief and accompanying appendix of the petitioner, the Commissioner of Children and Families, specifically, "all references to the status of the child, her treatment, and the parents' role in that treatment that postdate the [May 29, 2024] decision being appealed on grounds that the material is irrelevant, improper and prejudicial to the interests of the child and [the respondents]." We conclude that no action is necessary on the motion because we have not relied on the disputed materials in resolving the issues on appeal, and, to the extent that the brief or appendix contains "improper matter"; see Practice Book § 60-2 (3); the panel has not considered it.

respondent mother. When the hospital contacted the respondents to inform them that Isabella could return home, they refused to take her home. The department was contacted and invoked a ninety-six hour hold pursuant to General Statutes § 17a-101g (f). The court, *Lobo*, *J.*, thereafter granted a motion filed by the petitioner, the Commissioner of Children and Families, for an order of temporary custody and placed Isabella in the petitioner's care and custody. In April, 2023, the petitioner filed a neglect petition in the Superior Court, and, in August, 2023, the court, *Aaron*, *J.*, adjudicated Isabella as uncared for.

Following her commitment to the custody of the petitioner, Isabella again required hospitalization and was placed in multiple foster homes, none of which proved to be a viable option. The respondents and the department met in July, 2023, to discuss potential residential placements for Isabella. In November, 2023, the respondents filed with the court a "motion for emergency relief," in which they argued that the department was denying Isabella access to appropriate mental health care.[4] The court denied the respondents' motion, noting on the papers: "exhaust administrative remedies first."

On December 1, 2023, the respondents requested a treatment plan hearing with the department's administrative hearings unit in accordance with General Stat-

---

[4] Specifically, the respondents stated in their motion: "Isabella is currently endangered in the department's care, as she is being denied access to the level of mental health care that has been recommended for her, she is unable to maintain stability and has been through over ten foster placements since May, 2023, and the [department] has no plan in place for what to do next, as [Isabella] was denied admittance to [Solnit South, a state administered psychiatric facility for children with residential treatment facilities] as of October 18, 2023, because her needs are too complex. The parents seek an order that [the department] immediately identify a treatment plan that meets [Isabella's] needs and further seek court oversight of the child's treatment until her needs are met."

utes § 17a-15 (c).[5] They sought an order that the department "take immediate steps to place the child into an attachment focused residential treatment setting." The hearing officer, Attorney Mary Elizabeth Satran, conducted hearings via videoconference on January 5, 12, 19 and 26, and February 23, 2024. On March 15, 2024, the hearing officer issued a decision in which she found that the department's current service plan failed to meet Isabella's needs and directed the department to "explore appropriate residential care that is directly aimed at addressing the child's primary disability, reactive attachment disorder, as well as her other diagnoses and behavioral struggles, and provide an appropriate plan and placement directed at the permanency plan of reunification." The hearing officer directed the department to first focus on in-state placements and programs and then to consider out-of-state options if there was no appropriate in-state option. The hearing officer concluded that "the department's case plan is not appropriate to meet the child's needs and shall be revised as

---

[5] General Statutes § 17a-15 provides in relevant part: "(a) The commissioner shall prepare and maintain a written case plan for care, treatment and permanent placement of every child under the commissioner's supervision, which shall include, but not be limited to, a diagnosis of the problems of each child, the proposed plan of treatment services and temporary placement and a goal for permanent placement of the child . . . . The child's health and safety shall be the paramount concern in formulating the plan.

"(b) The commissioner shall at least every six months, review the written case plan of each child under the commissioner's supervision for the purpose of determining whether such plan is appropriate and make any appropriate modifications to such plan. . . .

"(c) Any child or the parent or guardian of such child aggrieved by any provision of a plan prepared under subsection (a) of this section, or by the commissioner's decision upon review under subsection (b) of this section, or any child or the parent or guardian of such child aggrieved by a refusal of any other service from the commissioner to which the child is entitled, shall be provided a hearing within thirty days following a written request for the same directed to the commissioner. . . .

"(e) Any hearing held pursuant to a request made under subsection (c) . . . shall be conducted as a contested case in accordance with [the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq.] . . . ."

set forth in this decision to provide for placement and services addressing the child's significant attachment issues and which is directed toward the goal of reunification, consistent with the permanency plan.'' The hearing officer's decision did not direct the department to place Isabella into a residential treatment setting or require that it do so as sought by the respondents.

On May 8, 2024, the respondents filed the application for a writ of mandamus and declaratory relief that is the subject of the present appeal. In the application, the respondents alleged in relevant part that they had "exercised their administrative procedural rights as it pertained to the care and treatment of their minor child, and they have secured an administrative treatment decision in their favor''; since the hearing, they did not believe the department was "taking steps to secure appropriate treatment for [Isabella],'' and "[the department's] current efforts do not run toward placement of [Isabella] but rather run toward keeping [her] out of the residential treatment program that was ordered''; "without consulting the family or the family therapist, [the department] has conducted [its] own new assessment of [Isabella] and concluded that [she] does not qualify for a congregate care placement''; the department's "actions and inactions . . . threaten, interfere with and impair the legal rights of [Isabella] to receive proper care and treatment'' and "the legal rights of the [respondents] to have reasonable efforts made to return their child to their own care and custody''; the department failed to appeal from the hearing officer's decision or ask for reconsideration; "the action of placing the child into an appropriate treatment facility is a ministerial act, requiring no exercise of a public officer's judgment or discretion, as the discretionary question has already been decided upon a full evidentiary record''; and the respondents "have no other means to secure their legal rights and those of their minor child than to

turn to [the Superior Court] for orders of enforcement of the administrative hearing decision.'' The respondents asked the court to issue an order directing the department to place Isabella "into an appropriate treatment facility for her primary mental health condition in accordance with the March 15, 2024 administrative hearing decision and to declare that the provision of this treatment for this child is not discretionary."

The petitioner filed a response to the respondents' application, arguing that the court should deny the application. According to the petitioner, the respondents were not entitled to a declaratory judgment because they had failed to exhaust their administrative remedies with the department pursuant to the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq.[6] Moreover, the petitioner asserted that the department had been complying with the March 15, 2024 decision by exploring in-state placements and programs, including "timely preparing a Commissioner Memo to request consideration of a residential treatment program (QRTP) and submitting a Child and Adolescent Needs (CANS) to Carelon Behavioral Health to

---

[6] Although the petitioner did not identify in her pleading what additional administrative remedies were available to the respondents, the petitioner's counsel indicated, at the hearing on the mandamus application and in the petitioner's brief on appeal, that, if the respondents believe that the department is not following the directions of the hearing officer by altering its case plan and exploring whether there are appropriate in-state or out-of-state residential treatment options for Isabella, the respondents could seek another case plan hearing under § 17a-15, which contains no express limitations on the number of such hearings a parent may request. Moreover, to the extent that the respondents seek specific declaratory relief requiring the department to place Isabella in a residential treatment program, the petitioner contends that the respondents can follow the procedures set forth in General Statutes § 4-176 and request such relief from the department. If they are aggrieved following either procedure, they could then file an administrative appeal with the Superior Court. See General Statutes §§ 4-176 (h) and 17a-15 (e). Because, in resolving whether the court properly denied the application for a writ of mandamus, we do not reach the issue of whether the respondents have other legal remedies available to them, we do not opine on the propriety or adequacy of such procedures.

determine the level of care based on medical necessity."[7] The department purportedly also had "reach[ed] out to Wellspring, an in-state residential treatment program that is not contracted with [the department], to determine the suitability of Isabella for their program." The petitioner stated that, on April 10, 2024, the department was "informed [that] the CANS for Isabella was not approved for a higher level of care, including therapeutic group homes or any congregate care placement based on her current assessment of needs and functioning." The petitioner also stated that, contrary to the respondents' representations in their pleading, the department had "shared information with [the respondents'] counsel about the steps [the department] has taken to explore in-state placements and programs that [are] aimed at addressing the child's needs." (Emphasis omitted.) Finally, the petitioner argued that placing a child into an appropriate treatment facility is not a ministerial act, as alleged by the respondents, but requires the department to exercise its discretion "to ethically explore a treatment facility that will address the child's disability, diagnoses, current level of need, and is in her best interests."

On May 29, 2024, following a hearing on the application, the court, *Lobo, J.*, issued an oral decision denying the application for a writ of mandamus.[8] According

---

[7] According to the petitioner, Carelon Behavioral Health's role is to match a child to an appropriate in-state QRTP treatment program.

[8] The court's oral ruling provides in relevant part: "The way . . . the court sees it, I think there's a couple of things that are going on, okay. One is, there's the decision itself. The administrative hearings officer . . . *didn't specifically commit to any placement in the decision* . . . that language being *to explore*. . . .

"As I read this [decision] . . . it doesn't direct any specific placement. The child needs to have appropriate care, but the way the decision is written, I think . . . the hearings officer was very appropriate—was very careful, shall I say, and not directing that but is ordering the department to explore other avenues because the current [plan] was not appropriate. . . .

"The court doesn't feel that the writ is the appropriate vehicle to challenge what you perceive as the department not meeting the child's needs. If it

to the court, it did not interpret the hearing officer's decision as *requiring* the department to identify a residential treatment facility and to place Isabella therein but, rather, as ordering the department to *explore options* for such a placement, and the court found that the department was complying with its obligations under the hearing officer's decision. The court also stated that it lacked jurisdiction to order any specific placement and concluded that the writ of mandamus was an inappropriate procedural vehicle for the respondents to pursue the relief they sought. Although the court further stated that it did not know the proper legal mechanism for the respondents to employ, it noted the possibility of seeking another administrative hearing before the department. This appeal followed.[9]

---

were . . . if the writ were to be ordered pursuant to the administrative decision, it would just be to make sure that the department is exploring all these other options. . . .

"So, the court is going to deny the application for the writ of mandamus." (Emphasis added.)

[9] The petitioner in her appellee's brief and the respondents in their reply brief raise potential jurisdictional issues that we briefly address and reject. See *Deutsche Bank National Trust Co.* v. *Fritzell*, 185 Conn. App. 777, 782, 198 A.3d 642 (2018) (this court ordinarily is required to address jurisdictional issues before considering merits of appeal), cert. denied, 330 Conn. 963, 199 A.3d 1080 (2019). The petitioner argues in her appellee's brief that this court lacks jurisdiction over the present appeal because the respondents purportedly failed to exhaust their administrative remedies before filing their application for a writ of mandamus with the trial court. The petitioner's argument, however, appears to conflate the subject matter jurisdiction of the trial court with the subject matter jurisdiction of this court. "It is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before *the Superior Court* will obtain jurisdiction to act in the matter. . . . [E]xhaustion of remedies serves dual functions: it protects the courts from becoming unnecessarily burdened with administrative appeals and it ensures the integrity of the agency's role in administering its statutory responsibilities." (Emphasis added; internal quotation marks omitted.) *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, 310 Conn. 797, 808, 82 A.3d 602 (2014). "Questions related to a trial court's jurisdiction over a case, [however], normally can, and should, be treated as analytically distinct from questions related to appellate jurisdiction. . . . They spring from different sources and, in most contexts, are not coterminous. Generally, the Appellate Court has jurisdic-

The respondents raise two claims on appeal. First, they claim that the court misinterpreted "the meaning and the finality" of the hearing officer's March 15, 2024 decision. Second, they claim that the court improperly concluded that a writ of mandamus was not the proper mechanism for seeking enforcement of the hearing officer's decision. Because our resolution of the first claim

---

tion to review final judgments of the Superior Court . . . even when the question at issue is whether the trial court properly dismissed the case for lack of jurisdiction." (Citations omitted.) *U.S. Bank National Assn.* v. *Rothermel*, 339 Conn. 366, 375 n.9, 260 A.3d 1187 (2021). Moreover, the matter underlying this appeal was not an administrative appeal but an application for a writ of mandamus. Although the availability of other remedies—administrative or otherwise—is a consideration for a court determining whether to grant or deny an application for a writ of mandamus; see *Cooke* v. *Commissioner of Correction*, 194 Conn. App. 807, 827, 222 A.3d 1000 (2019) (granting of writ is proper only if, inter alia, no other specific, adequate remedy is available), cert. denied, 335 Conn. 911, 228 A.3d 1041 (2020); that inquiry is substantively different from the exhaustion of administrative remedies doctrine. The present appeal meets all prerequisites for appellate jurisdiction in accordance with General Statutes § 52-263—the respondents petitioned for the writ of mandamus in the trial court, received a final disposition of their application by virtue of the trial court's denial, and are aggrieved by that denial for purposes of appeal.

We also reject any suggestion that the present appeal should be dismissed as moot. In their reply brief, the respondents reference the petitioner's argument in her appellee's brief that the trial court properly denied the application for a writ of mandamus because the hearing officer's March 15, 2024 decision was based on information about the child that is now "stale." The respondents construe this argument as a mootness challenge. It is axiomatic "that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal." (Internal quotation marks omitted.) *CT Freedom Alliance, LLC* v. *Dept. of Education*, 346 Conn. 1, 12, 287 A.3d 557 (2023). The petitioner's stale information argument is directed, however, to the propriety of the trial court's decision and not to whether this court can grant the respondents practical relief by deciding this appeal in their favor. If this court were to agree with the respondents, it necessarily would reject the petitioner's stale information argument and determine that the respondents are entitled to enforcement of the hearing officer's March 15, 2024 decision against the department via a writ of mandamus, thus providing the respondents with practical relief. Accordingly, we are not persuaded that the present appeal is moot.

is also dispositive of the second claim, we will address them together.

We begin with applicable principles of law, including our standard of review. "The requirements for the issuance of a writ of mandamus are well settled. Mandamus is an extraordinary remedy, available in limited circumstances for limited purposes. . . . It is fundamental that the issuance of the writ rests in the discretion of the court, not an arbitrary discretion exercised as a result of caprice but a sound discretion exercised in accordance with recognized principles of law. . . . That discretion will be exercised in favor of issuing the writ only [if the party seeking the writ] has a clear legal right to have done that which he seeks. . . . The writ is proper only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." (Internal quotation marks omitted.) *Cooke* v. *Commissioner of Correction*, 194 Conn. App. 807, 827, 222 A.3d 1000 (2019), cert. denied, 335 Conn. 911, 228 A.3d 1041 (2020).

The proponent of the writ must ensure that all three prongs of this test are satisfied, and the failure to satisfy any one of them will be dispositive. See *Greenfield* v. *Reynolds*, 122 Conn. App. 465, 473, 1 A.3d 125, cert. denied, 298 Conn. 922, 4 A.3d 1226 (2010). "Even satisfaction of this demanding [three-pronged] test does not, however, automatically compel issuance of the requested writ of mandamus. . . . In deciding the propriety of a writ of mandamus, the trial court exercises discretion rooted in the principles of equity. . . . We review the trial court's decision, therefore, to determine whether it abused its discretion in denying the writ. . . . In determining whether the trial court abused its

discretion, this court must make every reasonable presumption in favor of its action. . . . Nevertheless, this court will overturn a lower court's judgment if it has committed a clear error or misconceived the law." (Citations omitted; internal quotation marks omitted.) *Cooke* v. *Commissioner of Correction*, supra, 194 Conn. App. 827–28.

Because our review of the respondents' claims requires us to review the trial court's interpretation of the hearing officer's decision, we note that, like the construction of any judgment, this presents a question of law over which our review is plenary. See *Cunningham* v. *Cunningham*, 204 Conn. App. 366, 373, 254 A.3d 330 (2021). "As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) Id.

The respondents' first claim is that, in rejecting their application for a writ of mandamus, the court misinterpreted the meaning and the finality of the hearing officer's March 15, 2024 decision. The respondents argue in their brief that the issue before the hearing officer was "whether [Isabella] required a residential placement to meet her complex needs" and that "[t]he purpose of the hearing itself and the purpose of the written final decision was to resolve that question with finality." Thus, according to the respondents, it follows that the only reasonable interpretation of the hearing officer's decision was that it legally obligated the department both to identify an appropriate residential placement for Isabella and, once such a placement was identified,

to actually place her into that appropriate care facility. We disagree with the respondents' interpretation of the hearing officer's March 15, 2024 decision.

We conclude that, reading the decision as a whole, the hearing officer's March 15, 2024 decision cannot reasonably be construed as an order requiring the department to place Isabella into a residential treatment program. The hearing officer clearly agreed with the respondents that the department's existing case plan was not adequately meeting Isabella's needs. Nevertheless, the decision contains no language expressly directing the department to place Isabella into a residential treatment facility. Instead, the hearing officer ordered the department to revise the existing treatment plan and to "*explore* appropriate residential care that is directly aimed at addressing the child's primary disability, reactive attachment disorder, as well as her other diagnoses and behavioral struggles, and provide an appropriate plan and placement directed at the permanency plan of reunification." (Emphasis added.) In interpreting a written instrument, judgment, or order, we will afford the language used its ordinary and plain meaning. Here, the hearing officer's direction to the department was to "explore" residential treatment options for Isabella. Consistent with our interpretation of this directive, Merriam-Webster's Collegiate Dictionary defines the word "explore" as meaning "to investigate, study, or analyze: look into." Merriam-Webster's Collegiate Dictionary (11th Ed. 2014) p. 441. We agree with the trial court's assessment that, if the hearing officer's decision reasonably can be construed as mandating any particular action by the department, it is that the department revise its treatment plan, including by further investigating the possibility of placing Isabella in a residential treatment program if the department determined that such a placement was appropriate to achieving reunification with the respondents.

Our construction of the hearing officer's decision is also dispositive of the respondents' second claim on appeal, namely, that the court improperly concluded that a writ of mandamus was not the proper mechanism for seeking enforcement of the hearing officer's decision. Under the second prong of the three-pronged test for determining if a writ of mandamus will lie, the party applying for the writ must establish that he or she has "a clear legal right" to the performance of a mandatory duty. The respondents suggest that the hearing officer's decision established this "clear legal right." Given our interpretation of the hearing officer's decision, however, the respondents cannot satisfy prong two because, as we have explained, the March 15, 2024 decision does not mandate that the department place Isabella into a residential treatment program or any other specific placement. At most, the hearing officer's decision granted the respondents the right to have the department devise a new treatment plan and continue to look into the possibility of a residential placement, a duty that the court found the department was meeting. Stated succinctly, the hearing officer's decision did not create a "clear legal right" in the respondents to the remedy they sought by way of mandamus. Accordingly, we cannot conclude that the court abused its discretion when it concluded that the extraordinary remedy of mandamus was inappropriate under the circumstances before it.[10] If the respondents remain unsatisfied with the department's efforts, they are not precluded from pursuing further relief from the department. See footnote 6 of this opinion.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] Because we conclude that the respondents have not satisfied the second prong of the applicable test, we do not decide whether the requirements of prongs one and three of the test are met in the present case or whether other equitable considerations would militate against issuing a writ of mandamus.